## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **In Re:** | **CASE NO. 24−56114−PWB** |
| **FULCRUM LOAN HOLDINGS, LLC,** *et al.*,[1] | **CHAPTER 11** |
| **Debtors.** | **Jointly Administered** |

### APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION OF CONCIERGE AUCTIONS, LLC AS AUCTIONEER

The above-captioned debtors-in-possession (the **"Debtors"**) hereby file this Application (the "**Application**) for an order, substantially in the form attached hereto as **Exhibit A**, pursuant to Sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") authorizing the Retention of Concierge Auctions, LLC ("**Concierge**") as the auctioneer (the "**Auctioneer**") pursuant to the Auction Agreement between the Debtors and the Auctioneer substantially in the form attached hereto as **Exhibit B** (the "**Auction Agreement**"), to market and sell certain real estate listed in **Exhibit C** (collectively, the "**Properties**"), in an auction (the "**Auction**"). In support of the Application, the Debtors submit the Declaration of Chad Roffers, attached hereto as **Exhibit D** (the "**Declaration**"), and respectfully represent as follows:

### BACKGROUND

1.      The Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b), and the Debtors confirm their consent to the

---

[1] The Debtors in these jointly-administered Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Fulcrum Loan Holdings,LLC (7401), Fulcrum Tale LLC (2038), Strategic Retreat Holdings, LLC (2894), HIP II, LLC (0611), and JARBAI, LLC (1447)

entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.       Pursuant to Sections 327 and 328 of the Bankruptcy Code and the Bankruptcy Rules 2014 and 2016 the Debtors seek to (i) employ and retain the Auctioneer to market the Properties, pursuant to the terms of the Auction Agreement (the "**Auction Process**").

3.       On June 11, 2024 (the "**Petition Date**"), the Debtors commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors operate as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in these cases. On July 16, 2025, the Court entered an amended order jointly administering the Chapter 11 Cases [Doc. 32].

4.       The Debtors have determined in their business judgment that the best path toward maximizing distributions to their creditors will likely be through a sale of substantially all of their assets. To develop the widest marketing possible with the deepest breadth of experience in ultra-luxury real estate, the Debtors are now moving to retain the preeminent luxury real estate auctioneer in the county (if not the world). The Debtors believe that Concierge brings (i) worldwide reach through its digital bidding platform; (ii) a deep and unique knowledge base regarding auctions of ultra-luxury real estate; and (iii) an additional network of persons interested in luxury real estate (and ultra-luxury real estate) from where the purchaser(s) of the Properties may ultimately be found. As such, given the unique character of the Properties, the Debtors believe that the retention of Concierge, in combination with Chase Mizell of Atlanta Fine Homes, Sotheby's International Realty, as the broker pursuant to a separately filed retention application ("**Listing Broker**"), is the best way to maximize the value of the Properties.

5.       The Debtors' Properties are several key parcels of real estate comprising the Hampton Island Preserve luxury mixed-use development in Riceboro, Georgia, which includes such amenities as a golf course, horse stables, and more.

6.     Because of the nature of the Properties, the marketing campaign requires professionals with expertise in the sale of ultra-luxury homes and access to client lists of potential purchasers that have both the interest and the financial wherewithal to consummate a transaction such as the sale(s) contemplated here. The Debtors believe that Concierge meets all of these qualifications and that its retention will greatly facilitate a sale process for the Debtors' assets.

7.     The anticipated sale process includes the opportunity for an interested buyer to acquire, collectively, all of the parcels that make up the Properties, through either a private sale prior to the set auction date (a "**Private Sale**"), or, at Auction (the "**Auction Process**"), if the Properties are under contract with a buyer via Private Sale by December 11, 2025 (the "**Private Sale Deadline**"). Debtors believe that this structure will allow interested buyers that wish to secure ownership of the Properties to purchase the Properties through Private Sale without the competition attendant in the Auction Process to do so by the Private Sale Deadline, while also promoting finality in the Bankruptcy Case by ensuring that if the Properties are not sold through Private Sale by the Private Sale Deadline, that, thereafter, the Auction will be the exclusive venue for any offer and acceptance with respect to the sale of the Properties, which such Auction Process is scheduled to conclude on December 18, 2025 in accordance with the terms of the Auction Agreement.

8.     The terms and conditions governing the Auction Process are identified in the Auction Agreement. The Auction Agreement lists in full the procedures and processes that will be followed the event of an Auction. Nothing in this application should be interpreted to change what is established in the Auction Agreement.

## RELIEF REQUESTED

9.     Through this Application, the Debtors are seeking entry of an order authorizing them to enter into the Auction Agreement, effective as of the date of the Auction Agreement, pursuant to which Concierge will act as the Debtors' auctioneer with the right, together with the Listing Broker, to market the Assets for sale.

10.    As set forth in the Auction Agreement, the High Bidder (as such term is defined in the Auction Agreement) will pay Concierge a buyer's premium equal to twelve percent (12.00%) of the purchase price, which buyer's premium shall be in addition to the purchase price paid for the Properties, if the Properties are sold via auction (the "**Buyer's Premium**"), subject to a minimum fee of $250,000 (*see* Auction Agreement § 9(a)); *provided that* after Concierge has received partial payment of the Buyer's Premium equal to six percent (6.00%) of the purchase price, the balance of the Buyer's Premium will be credited to the bankruptcy estate. Notwithstanding the foregoing, if Bay Point is the High Bidder, Bay Point will not be required to pay the Buyer's Premium and instead the Auctioneer will receive a flat fee from Bay Point of $500,000 as compensation. *See* Auction Agreement, § 9(b)(i). In the event of a Private Sale, Concierge will receive a fee equal to three percent (3.00%) of the purchase price paid by the Private Sale buyer.

11.    By this Application, the Debtors seeks authority to employ Concierge as the Auctioneer with respect to the Properties, pursuant to the terms of the Auction Agreement, effective as of the date of the Auction Agreement. The Debtors shows that Concierge is well-qualified to perform the work required in this case and is experienced in the matters for which auction services are required.

## BASIS FOR REQUESTED RELIEF

12.    Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval, may employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

    a.    is not a creditor, an equity security holder, or an insider;

    b.    is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

c.  does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

13.     Further, Bankruptcy Rule 2014 provides that an application for retention of a professional person is to include:

> Specific facts showing the necessity for the employment, the names of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, and any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

14.     The Debtors submit that employment of the Auctioneer is in accordance with Section 327(a) of the Bankruptcy Code and that this Application is in compliance with Bankruptcy Rule 2014.

15.     Annexed hereto as **<u>Exhibit D</u>** is the Declaration of the Auctioneer in support of this Motion. To the best of the Debtors' knowledge, and as set forth in more detail in the Declaration, the Auctioneer is a "disinterested person" as that term is defined in the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors or the Debtors' estates.

16.     The Debtors also seek approval of the Auction Agreement pursuant to section 328(a) of the Bankruptcy Code, which provides that a debtor, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingency fee basis." 11 U.S.C. § 328(a). Section 328(a) of the Bankruptcy Code permits compensation of professionals, such as auctioneers, brokers, accountants, and financial advisors, on flexible terms that reflect the nature of their services and market conditions. *See Donaldson Lufkin & Jenrette Securities Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862 (5th Cir. 1997) ("Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor

or committee)"); *see also In re Wash. Mut., Inc.,* No. 08-12229, 2018 WL 704361, at *4 (Bankr. D. Del. Feb. 2, 2018) (stating that "courts 'must protect agreements and expectations' once they have been found reasonable") (*quoting In re Nat'l Gypsum Co.,* 123 F.3d 861).

17.    The Debtors believe the Auctioneer's proposed compensation detailed herein is reasonable. As set forth herein, the Auctioneer is being retained and will be employed by the Debtors to perform a highly specialized and discrete task and accordingly, will not be compensated based upon time and effort expended. Instead, the Auctioneer will be compensated based on a percentage of the sale price of any final transaction consummated in connection with the Properties. Requiring the Auctioneer to record and submit detailed time entries in light of the nature of the services to be rendered by it and the percentage-based fee proposed under the Auction Agreement would be unduly burdensome to the Auctioneer. The Debtors further acknowledge and agree that the ultimate benefit to the Debtors' estates from the services to be performed likely could not be measured merely by reference to the number of hours to be expended by the professionals in the performance of such services.

18.    Accordingly, the Debtors request that the Auctioneer be relieved of the requirement to file a fee application under Section 330 of the Bankruptcy Code or otherwise; *provided that*, for the avoidance of doubt, disbursement of the Auctioneer's compensation hereunder shall remain subject to further order of the Court under Section 330 of the Bankruptcy Code (as that section incorporates Section 328 of the Bankruptcy Code).

19.    The Debtors further submit that the terms of the Auction Agreement were negotiated in good faith and at arm's-length between the Debtors and Auctioneer and reflect the Debtors' evaluation of the extensive work to be completed and substantial commitment by the Auctioneer. The terms and conditions of the Auction Agreement, including the fee structure, are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code considering (a) the numerous issues that the Auctioneer may be required to address in performing its services for the Debtors pursuant to the Auction Agreement, (b) the Auctioneer's commitment to the variable time requirements and effort necessary to address all such issues as

they arise, (c) the Auctioneer's substantial reputation and experience with respect to the unique market and type of property, (d) the market prices for the Auctioneer's services for engagements of this nature, and (e) the fee structures typically utilized by the Auctioneer and other similar firms, which do not bill their clients on an hourly basis, in bankruptcy or otherwise.

20.     Accordingly, the Debtors believe that the Auctioneer's compensation should be subject only to the standard of review in section 328(a) and should not be subject to any additional standard of review under section 330 of the Bankruptcy Code. Retention of the Auctioneer is appropriate and in the best interest of the Debtors, their estates, and all parties in interest. For the reasons set forth above, the Debtors believe that the Auctioneer's retention on the terms of the Auction Agreement is fair, appropriate, in line with the market, and reasonable.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as **Exhibit A** approving the retention of the Auctioneer and granting such other and further relief as the Court may deem just and proper.

Dated: September 8, 2025                          Respectfully submitted,

                                                 KECK LEGAL, LLC

                                                 */s/ Benjamin R. Keck*
                                                 Benjamin R. Keck, Ga. Bar No. 943504
                                                 2801 Buford Highway NE, Suite 115
                                                 Atlanta, GA 30329
                                                 Tel. (470) 826-6020
                                                 bkeck@kecklegal.com
                                                 *Counsel for the Debtors*

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **In Re:** | **CASE NO.  24−56114−PWB** |
| **FULCRUM LOAN HOLDINGS, LLC, *et al.*,[1]** | **CHAPTER 11** |
| **Debtors.** | **Jointly Administered** |

**ORDER AUTHORIZING THE RETENTION OF CONCIERGE AUCTIONS, LLC AS
AUCTIONEER PURSUANT TO SECTIONS 327(A) AND 328(A) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(A)**

Upon the application (the "**Application**")[Doc.__] of the above-captioned Debtors, for an

order pursuant to Sections 327(a) and 328(a) of title 11 of the United States Code (the

---

[1] The Debtors in these jointly-administered Chapter 11 cases, along with the last four digits of each Debtor's federal
tax identification number, are: Fulcrum Loan Holdings, LLC (7401), Fulcrum Tale LLC (2038), Strategic Retreat
Holdings, LLC (2894), HIP II, LLC (0611), and JARBAI, LLC (1447)

"**Bankruptcy Code**") authorizing the Debtors to retain Concierge Auctions, LLC as the auctioneer (the "**Auctioneer**") for the Debtors' properties located in Riceboro Georgia as listed in __Exhibit A__ annexed hereto (collectively, the "**Properties**"); and upon the retention agreement annexed hereto (the "**Agreement**").

The Court having reviewed the Motion and the terms of the Agreement; being satisfied that the Auctioneer is a "disinterested" person with the meaning of the Bankruptcy Code; and finding that the relief requested in the Application is in the best interests of the Debtors, their creditors, and all parties-in-interest; and it further appearing that the proposed compensation terms, as set forth in the Agreement are reasonable for purposes of section 328(a) of the Bankruptcy Code and sufficient cause appearing therefore,

IT IS HEREBY ORDERED, that

1. The Application is GRANTED in accordance to the extent set forth herein;

2. In accordance with Sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors are hereby authorized to employ and retain the Auctioneer to assist with the sale of the Properties on the terms set forth in the Agreement;

3.     Any payment of compensation to the Auctioneer shall require further order of the Court following notice and hearing pursuant to 11 U.S.C. § 330;

4.     The Debtors are authorized to take all actions necessary to effectuate the retention of the Auctioneer pursuant to this Order in accordance with the Agreement;

5.     The Court shall retain jurisdiction with respect to all matters arising from or related to the Agreement and the retention of the Auctioneer.


### END OF ORDER ###

**Prepared and presented by:**

**KECK LEGAL, LLC**

*/s/ Benjamin R. Keck*
Benjamin R. Keck, Ga. Bar No. 943504
2801 Buford Highway NE, Suite 115
Atlanta, GA 30329
Tel. (470) 826-6020
bkeck@kecklegal.com
***Counsel for the Debtors***

**Distribution List**

Benjamin R. Keck
KECK LEGAL, LLC
2801 Buford Highway NE, Suite 115
Atlanta, GA 30329

Office of the United States Trustee
c/o Alan Hinderleider
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 303033

## **Exhibit B**

**Auction Agreement**

# CONCIERGE AUCTIONS



## AUCTION AGREEMENT

| | | |
|---|---|---|
| **PROPERTY ADDRESS:** | All parcels located on Hampton Island in Georgia set forth on <u>Exhibit A</u> attached hereto and made a part hereof | (the "***Property***") |
| **OWNER'S LEGAL NAME:** | Fulcrum Loan Holdings, LLC; Fulcrum Tale LLC; Strategic Retreat Holdings, LLC; HIP II, LLC f/k/a Hampton Island Preserve II, LLC; and Jarbai, LLC (collectively, the "***Debtors***") | ("***Owners***," each being an "***Owner***") |

| **CURRENCY:** | **AUCTION PROCESS TIMELINE:** |
|---|---|
| USD | October 16, 2025 – December 18, 2025, subject to Bankruptcy Court approval |

| **MORTGAGES/LIENS?** | **IF YES, DESCRIPTION & CURRENT BALANCE/PAYOFF:** | **FURNISHED?** |
|---|---|---|
| X YES | Sale will be free and clear of all liens pursuant to Bankruptcy Court Order. | ☐ YES |
| ☐ NO | | X NO |

This Auction Agreement (including those terms set forth above and any attached exhibits, the "***Agreement***") is effective as of the later of the dates on which the following conditions occur (such latest date, the "***Effective Date***"): (a) the last party's signature between Concierge Auctions, LLC, a Delaware limited liability company, with offices at 228 Park Avenue S, Suite 70835, New York, NY 10003 ("***Concierge***"), and all of the Owners; and (b) the entry of orders by the Bankruptcy Court (defined below) authorizing the Debtors to employ Concierge pursuant to the terms of this Agreement. During the term of this Agreement, the Owners engage Concierge to, subject to the Private Sale terms herein, market the Property for Sale via Auction (the "***Auction***"), and the Listing Broker (defined below) on the sale of the Property, on the terms and conditions set forth in this Agreement and in Concierge's standard bidder terms and procedures attached hereto as <u>Exhibit B</u>, as approved by the Bankruptcy Court (the "***Approved Bid Procedures***"); *provided, however, that* if the Approved Bid Procedures conflict with any Sale Order,[1] the terms of Sale Order shall govern.

Concierge and the Owners (collectively, the "***Parties***," and each a "***Party***") acknowledge that the Owners have filed for bankruptcy protection in the United States Bankruptcy Court for the Northern District of Georgia (the "***Bankruptcy Court***"). The Owners' bankruptcy cases are being jointly administered as Case No. 24-56114-PWB (the "***Bankruptcy Case***"). The Parties agree and acknowledge that this Agreement and Concierge's professional employment are subject to approval by the Bankruptcy Court. Concierge shall have the prior right to approve in advance any application for employment filed with the Bankruptcy Court, in its reasonable discretion. If the Bankruptcy Court does not approve Concierge's employment on the terms set forth herein for any reason, including Owners' withdrawal of the application for employment before an order granting the same is entered by the Bankruptcy Court, this Agreement shall be immediately null and void.

All parcels of the Property will be offered collectively within the Auction format.   The Property shall include the following parcels, as depicted on the exhibit attached hereto as <u>Exhibit A</u> attached hereto and made a part hereof.

---

[1] As used herein, the term "***Sale Order***" shall mean, if applicable, an order of the Bankruptcy Court approving the sale of the Property at Auction.

CA08.2023



1

**CONDITIONS PRECEDENT: Notwithstanding the foregoing, this Agreement shall not become effective, and Concierge shall have no obligations hereunder, unless and until the Bankruptcy Court approves Concierge's employment pursuant to the material terms of this Agreement. Without limitation but for the avoidance of doubt the material terms of this Agreement include the following: (1) the sale by auction of all Core Assets listed in Exhibit A; and (2) all compensation arrangements set forth in Section 9 herein, including but not limited to the Buyer's Premium, Private Sale Fee, and the Flat Fee, as each such term is defined herein. The parties hereto agree that within thirty (30) days following entry of the Concierge Retention Order, this Agreement shall be amended by written agreement of all Parties to include specific legal descriptions for all parcels comprising the Core Assets.**

**1.      AUCTION FORMAT.** All of the parcels that comprise the Property shall be offered for Sale, collectively, at Auction; *provided, however,* that (i) nothing set forth herein shall prevent Owners from collectively accepting an offer and consummating a private sale for the Property outside of the Auction Process as approved by the Bankruptcy Court (a "***Private Sale***"); and (ii) for the avoidance of doubt, Concierge shall be entitled to compensation in the event of any Private Sale in accordance with the terms of this Agreement. The Property will be offered for Sale at Auction on an "as-is, where-is, with all faults" basis. Notwithstanding the foregoing, nothing contained herein shall affect the protections that may be available to the high bidder for the Property at Auction (a "***High Bidder***") through any order entered by the Bankruptcy Court with respect to a sale of the Property. The Auction shall be conducted through Concierge's digital bidding platform (the "***Digital Bidding Platform***") with no reserve price. The Owners shall be obligated to sell the Property to the highest bidder who has executed and adhered to Concierge's universal bidder terms and conditions, together with all other documents required by Concierge to be adhered to and executed and delivered prior to or in connection with placing a bid on any property (such bidder, a "***Qualified Bidder***") at the Auction (or back-up bidder as described below), regardless of price, subject to Bankruptcy Court approval.

**2.      AUCTION TIMELINE.**

The Auction process shall commence on the later of the following dates (such date, the "***Auction Launch Date***"): (i) October 16, 2025; (ii) the date that the Bankruptcy Court shall have entered an order approving the retention of Concierge as auctioneer for the Owners pursuant to this Agreement (the "***Concierge Retention Order***"), or (iii) as soon as reasonably practicable thereafter. Beginning on the Auction Launch Date, Concierge, along with Chase Mizell of Atlanta Fine Homes I Sotheby's International Realty, exclusively engaged by the Owners for the purpose of marketing the sale of the Property (the "***Listing Broker***"), shall market the Property through the Auction process in accordance with that certain Exclusive Seller Brokerage Engagement Agreement, as modified by the Bankruptcy Court in the applicable order, Docket No. 211 (the "***Approved Brokerage Agreement***").

The following dates are provided assuming the Bankruptcy Court has entered the Concierge Retention Order no later than October 18, 2025. **If the Concierge Retention Order is entered following October 16, 2025, all dates set forth in the following paragraph are subject to be updated by Concierge in Concierge's reasonable discretion:**

   *Pre-Auction Private Sale:* If, as of 5:00 p.m. eastern time on December 11, 2025 ("***Private Sale Deadline***"), a purchase and sale agreement applicable to the sale of the Property has not been duly executed by a buyer and all Property Owners in accordance with the Private Sale process approved by the Bankruptcy Court (a "***Private Sale Contract***"), from and after the Private Sale Deadline, the Auction shall be the exclusive venue for any offer and acceptance with respect to the purchase and sale of the Property.

   *Starting Bid Incentive:* Pre-Auction bidding may commence on the Auction Launch Date. The amount of any bidder's starting bid submitted as of 11:59 p.m. eastern time immediately prior to December 4, 2025 (such date, the "***Auction Start Date***"), is a "***Starting Bid***" and shall not be disclosed to the public or any other bidder until the Auction Start Date as further detailed below. To encourage pre-Auction Starting Bids, Concierge agrees to discount by 50% the Buyer's Premium (as hereinafter defined) due in connection with any pre-Auction Starting Bid to any bidder who submits a qualifying Starting Bid prior to the commencement of the auction on the Auction Date, in the event that



2

such bidder is the winning bidder at the Auction (the "***Starting Bid Incentive Credit***"). The Starting Bid Incentive Credit shall be applied at the closing of the Property sale to reduce the Buyer's Premium due in connection with the winning bidder's purchase of the Property but only on the amount of the Starting Bid. To the extent that the winning bid exceeds the amount of the Starting Bid, the winning bidder will pay the full Buyer's Premium on the portion of the winning bid that exceeds the Starting Bid. Notwithstanding the foregoing, Bay Point shall not be eligible to receive any Starting Bid Incentive Credit on the Flat Fee (defined below).

_Bid Unveiling and Auction Close_: Provided there is no Private Sale Contract in effect in accordance with the terms herein as of the Private Sale Deadline, on the Auction Start Date all then-submitted bids will be unveiled on the Digital Bidding Platform and made available to registered users of the Digital Bidding Platform. Bidding shall continue through the Digital Bidding Platform through the conclusion of the Auction on December 18, 2025 (the "***Auction Close Date***").

_Sale Order_: The Sale of the Property at Auction shall be subject to the Sale Order.

**3.    BIDDING PROCEDURES; CREDIT BIDS.**    The Auction will be conducted pursuant to the Approved Bid Procedures. Concierge shall be permitted to implement other terms and conditions to regulate the Auction Process so long as such other terms and conditions are not inconsistent with the Approved Bid Procedures. For the avoidance of doubt, Bay Point Capital Partners II, LP ("***Bay Point***"), and any other party whose secured creditor status and priority position has been finally determined by the Bankruptcy Court through a final, non-appealable order, shall be permitted to credit bid at the Auction up to the full amount of such secured creditor's actual secured debt against the Property as determined by the Bankruptcy Court (such actual secured debt amount as determined by the Bankruptcy Court, the "***Actual Secured Debt***", and such bid, a "***Credit Bid***"). No party may submit a Credit Bid unless and until such party's status as a secured creditor and the amount of such party's secured claim have been finally adjudicated by the Bankruptcy Court through a final, non-appealable order.  Any purported Credit Bid submitted by a party whose secured creditor status remains disputed or subject to appeal shall be deemed invalid and rejected by Concierge, subject to Bankruptcy Court approval of such rejection.

**4.    DUTIES OF THE OWNERS.** The Owners agree to cooperate with Concierge in good faith and in all ways consistent with this Agreement. If the Owners do not have recent surveys of the all parcels of the Property, updated title reports and/or professional, comprehensive property inspections, then immediately following the execution of this Agreement, the Owners shall procure individually, or alternatively will promptly cooperate with Concierge, on each Owner's behalf,  to obtain the following (collectively, the "***Diligence Materials***"): a survey of the Property acceptable to the Title Company, an updated title report, and a professional property inspection, in order for Concierge to provide them to prospective bidders to conduct bidders' due diligence, all at Owner's sole expense; _provided, however,_ that at Closing, any Diligence Material expense paid by Concierge shall be allocated to buyer and credited to Concierge.  The Owners will allow Concierge, its agents, the Listing Broker, and Qualified Bidders to access to the Property at all reasonable times and shall provide and maintain utilities, grounds and other administration vital to the functioning of the Property throughout the term of this Agreement.

Beginning on the Auction Launch Date and continuing through the Auction Close Date, the Owners will promptly notify Concierge or any inquiries regarding the Property and/or the Auction and shall instruct any such person(s) to contact Concierge. The Owners will not enter into any agreement to sell or otherwise transfer all or any portion of the Property other than through a Private Sale in accordance with this Agreement or at Auction in accordance with this Agreement. The Owners agree to promptly notify Concierge of any agreement to sell the Property pursuant to a Private Sale.

The Owners agree to take such other actions and to execute such documents consistent with the terms of this Agreement as may be reasonably requested by Concierge and/or the Title Company to conduct the Auction and to complete the Sale of the Property, including, without limitation, preparing an "as-is" purchase contract (i) with no conditions or contingencies (other than good and marketable title and the entry of a Sale Order by the Bankruptcy Court); (ii) consistent with applicable laws; (iii) which provides that the buyer thereunder shall pay the Buyer's Premium to Concierge; (iv) which, regardless of the customary allocation of costs in the community in which the



3

Property is located but subject to applicable law, provides that, the Owners shall pay all costs associated with title searches, title insurance commitments, the issuance of a title insurance policy to buyer and the buyer shall pay for all other costs associated with the transfer of the Property and the closing of the sale unless contrary to applicable law; (v) which provides the closing of the sale shall occur on or before the date that is thirty (30) days following the Auction Close Date, or such later date as may be ordered by the Bankruptcy Court (the "**Purchase and Sale Contract**").   The Owners shall not (x) collude with any bidder or bid, (y) instruct or permit any other person to bid on the Owners' behalf at the Auction; or (z) interfere in any manner with the conduct of the Auction. The Owners agree to use their best efforts and to work expeditiously following the Auction to execute a final Purchase and Sale Contract, subject only to the Bankruptcy Court entry of a Sale Order with respect to the same.

Owners' shall provide Concierge with official documents of identity (including beneficial owners if applicable) upon request in order to facilitate Concierge's compliance with its anti-money laundering, sanctions and anti-terrorism financing obligations under applicable laws. The official documents of identity if provided in copy shall be certified by a professional acceptable to Concierge, if Concierge so requests. If Concierge has not completed its enquiries in respect of anti-money laundering, sanctions and anti-terrorism financing or other checks as it considers appropriate concerning the Owners and Owner's agents to Concierge's satisfaction at its discretion, Concierge shall be entitled not to proceed with the Auction or to cancel the Auction with retroactive effect and to take any further action required or permitted under applicable law.

5.        **CONDITIONS OF SALE.** Concierge agrees and understands that any Sale of the Property shall be subject to the terms and conditions of the Approved Bid Procedures and shall require the Bankruptcy Court's entry of a Sale Order prior to consummation of such Sale. The Owners shall move expeditiously to seek the Sale Order at the Bankruptcy Court's earliest opportunity.

Owners are selling the Property in an "AS IS" condition or basis by grant deed without any representations or warranties whatsoever, including, without limitation, representations or warranties as to oil and mineral rights, city or government agency notifications regarding work to be done, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding the subdividability of the Property, _provided_, _however_, that the Owners shall be required to deliver good and marketable title to the buyer(s) of the Property, insurable by Fidelity National Title Insurance Company (the "**Title Company**"). The Property is being sold subject to standard allocations and any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property. Title, however, is to be transferred free and clear of all liens, claims and encumbrances except those non-monetary liens and encumbrances set forth on a recent preliminary title report issued by the Title Company that do not affect the marketability or insurability of the Property.

6.        **REPRESENTATIONS OF THE OWNERS**.  As of the Effective Date, the Owners hereby represent and warrant, solely with respect to itself and the parcel(s) of the Property owned by such Owner, to Concierge that the following statements are true and correct and shall remain true and correct throughout the term of this Agreement with respect to each Owner, respectively: (a) the Third-Party Owners and, with respect to the Debtors, subject to Bankruptcy Court approval, have full power and authority, and the signatory hereto has full authority on behalf of each Owner, to execute this Agreement, to sell the Property, and to consummate the transactions contemplated by this Agreement, which is a valid and binding agreement of the Owners, enforceable against the Owners in accordance with its terms and, If Owner is a trust, Owner and the Owner's signatories hereto, further represent and warrant that the trustee(s) named are the duly authorized and appointed trustee(s) of the trust, and that the trustee(s) who are a signatory hereto have sole and exclusive authority to dispose of the Property, accept and receive payment for the purchase and sale of the Property, enter into this Agreement, and that there are no other claimants, trustees, beneficial owners, or disputes, of, or pertaining to, the Property; (b) this Agreement and the Owners' obligations hereunder do not conflict with any other agreement to which Owner is a party; (c) Owners have not granted a right or option to purchase the Property, in whole or in part; (d) the conveyance of the Property to a third party purchaser in accordance with the Approved Bid Procedures will not require the consent of any affiliate of the Owners or any other third party, other than potentially the Bankruptcy Court; (e) the Owners shall maintain at all times reasonably adequate liability and property insurance coverage at a level which is commensurate with other



4

prudent owners of real property like the Property for the duration of this Agreement, the Auction, and activities related to the Sale of the Property; (f) the Owners have sole and legal beneficial ownership of the Property good and marketable, insurable fee simple title (or the equivalent) to the Property; (g) the Owners have not caused any work or improvements to be performed upon the Property for which there remains outstanding any obligation that could serve as the basis for any lien or encumbrance; (h) no litigation or proceeding is pending against Owner or the Property, except as provided in the Bankruptcy Case, and no such litigation has been threatened; (i) the Property will be sold unfurnished; *provided that* nothing contained herein shall prevent the sale of furniture to a successful offeror at Private Sale (a "***Successful Offeror***") or High Bidder through a separate agreement; and (j) Third-Party Owners are able to repay any shortfall between the sale price of the Property and any mortgages, liens or monetary encumbrances on the Property. If the sale of the Property may result in a deficiency balance (i.e. a "short sale"), then it shall not proceed unless previously agreed by Concierge in writing, and Owner has informed any such lienholder of the terms of this Agreement and has obtained such lienholder's prior written approval to conduct the Auction and made arrangements to satisfy any potential deficiency. Owner authorizes Concierge to contact any of Owner's then existing lienholders at any time to confirm the terms of any arrangement between Owner and the lienholder related to a potential deficiency balance.

7.    **ACKNOWLEDGEMENTS OF THE OWNERS**. The Owners acknowledge and agree that: (a) there is no guarantee that (i) the Property will be sold through the Auction process to any bidder, (ii) any High Bidder can/will perform its obligations or that it is qualified or financially able to purchase one or more of the Property, and Concierge has no obligation to investigate or to qualify any bidder's ability to consummate a purchase the Property, or (iii) Owners will receive any specific amount or sale proceeds from the Auction or otherwise; (b) OWNERS HAVE NOT RECEIVED FROM CONCIERGE OR ANY OF ITS EMPLOYEES OR AGENTS, AND IS NOT RELYING ON, ANY REPRESENTATIONS, WARRANTIES OR GUARANTEES AS TO THE SALE PROCEEDS THAT OWNERS MAY RECEIVE FROM THE AUCTION OR THE QUALIFICATIONS OF ANY BIDDER – ANY SUCH STATEMENTS ARE OPINIONS ONLY AND SHOULD NOT BE CONSTRUED AS PROMISES OR GUARANTEES ABOUT THE AUCTION; (c) Concierge shall have no responsibility whatsoever for any act associated with the closing of the Purchase and Sale Agreement, escrow, or consummation of the Sale of the Property other than as set forth in this Agreement and/or the Approved Bid Procedures, and the Owners and/or their third party agents are solely responsible for such acts; (d) the Parties hereby acknowledge and agree that all title reports, escrow, closing, and post-closing services will be provided by the Title Company; Novare National Settlement Service, LLC; and/or Ultra Escrow, a division of the Title Company (the "***Escrow Agent***"), the cost of which shall be paid from the gross sale proceeds or, if there are not sufficient gross sale proceeds, by, with respect to a Debtor, the High Bidder/Successful Offeror and with respect to a Third-Party Owner, by the Third-Party Owner; (d) Concierge shall have the absolute right (i) to permit inspections of the Property, (ii) to disseminate any information regarding the Property or the Auction to any third-party, (iii) subject to the Approved Bid Procedures, to Auction the Property for Sale to bidders, (iv) to disclose the identity of the Owners, and (v) to publicly announce and publicize after the results of the Auction, including details concerning Concierge's marketing efforts and the amount of any successful bid; (e) the Owners agree to assist and use good faith diligent efforts in gaining the cooperation of the Listing Broker with the Auction Process, including cooperation with respect to marketing the Property; (f) Concierge's employees and agents have no authority to add to or vary the terms of this Agreement orally or (except in a written amendment duly executed by an authorized officer of Concierge) in writing; and (g) Owners will be responsible for payment of all fees due to the Listing Broker. The Owners authorize Concierge and its representatives to enter upon and use the Property for all purposes related to its services under this Agreement, without charging any fee. The Owners acknowledge that Concierge is acting as an agent for the Owners only in its capacity as Auctioneer and is not acting as its real estate broker. Potential Bidders are responsible for due diligence regarding the accuracy of the information about the Property provided to Concierge and the Owners expressly waive any claims that one or more of the Owners may have against Concierge related to information disseminated in connection with the Sale of the Property if such information was provided by the Owners or their agents, *provided, however, that* Concierge presented such information accurately and in good faith.  In the event of late payment of any sum owed to Concierge under this Agreement by any Third-Party Owner, such Owners shall pay interest at the annual percentage rate of 6% above the interest rate applied by the European Central Bank to its most recent main refinancing operations (the "***Reference Rate***"), but at 6% a year for any period when that Reference Rate is below 0%, and in no event greater than the maximum rate permitted by law, from the date on which payment is due to the date the full amount due is received in cleared funds, without the necessity of a reminder by Concierge. The



5

Reference Rate (a) for the first semester of the year concerned shall be the rate in force on 1 January of that year; (b) for the second semester of the year concerned shall be the rate in force on 1 July of that year.

**8.      SERVICES OF CONCIERGE**. Beginning on the Effective Date, Concierge will use commercially reasonable efforts to coordinate with the Listing Broker to (a) market the Property for Sale by Auction consistent with the Approved Bid Procedures and (b) solicit and accept bids in accordance with the Approved Bid Procedures, including the registration of bidders on the Digital Bidding Platform.

**9.      COMPENSATION TO CONCIERGE**.

   a.      <u>Buyer's Premium</u>

            i.    <u>Collection of Buyer's Premium</u>.  As part of any closing of the Sale of the Property at Auction (the "***Closing***"), the High Bidder (including any backup bidder) shall pay Concierge as compensation for its services an amount equal to twelve percent (12.00%) of the successful High Bid amount (such successful High Bid amount, the "***Purchase Price***"), which 12% shall be in addition to the full amount of the Purchase Price, as a buyer's premium (the "***Buyer's Premium***"). In no event shall the Buyer's Premium due to Concierge be less than two hundred fifty thousand dollars ($250,000) (the "***Minimum Fee***"). Notwithstanding that a winning bid may consist in whole or in part of a Credit Bid, and regardless of whether such Credit Bid results in net proceeds being distributed to the bankruptcy estate, all High Bidders (other than Bay Point, which is subject to the fixed fee set forth in Section 9(b)) shall remain obligated to pay the Buyer's Premium in cash at Closing, and such payment shall be a condition precedent to the Closing.

            ii.   <u>Staring Bid Incentive Credit</u>.  Notwithstanding anything to the contrary herein, Concierge shall advertise and offer the Starting Bid Incentive Credit to each Property bidder.

            iii.  <u>Buyer's Premium Credit to the Bankruptcy Estate</u>.  After Concierge receives partial payment of the Buyer's Premium equal to six percent (6.00%) of the purchase price, the balance of the Buyer's Premium will be credited to the bankruptcy estate. Notwithstanding the foregoing, this provision applies only to Auction sales and does not apply to Bay Point Credit Bids or Private Sales.

   b.      <u>Exceptions to Payment of Buyer's Premium</u>
            i.    <u>Sale to Bay Point</u>.  Notwithstanding anything to the contrary herein, if Bay Point is the High Bidder at the Auction in any capacity, including whether as a stalking horse bidder, a backup bidder, or otherwise, pursuant to a Credit Bid, Bay Point shall not be required to pay a Buyer's Premium, and, in lieu of the same, shall pay a flat fee of five hundred thousand dollars ($500,000) to Concierge for conducting the Auction of the Property and all provided services related thereto and hereto (the "***Flat Fee***"). The Flat Fee shall be payable in cash directly to Concierge, regardless of whether Bay Point's Credit Bid results in any net sale proceeds being distributed to the Owners or the bankruptcy estate.

            ii.   <u>Private Sale</u>.  A Successful Offeror that closes a Private Sale for the Property shall not be required to remit a Buyer's Premium; <u>*provided*</u>, <u>*however*</u>, that upon the Closing of a Private Sale, Concierge shall receive an amount equal to three percent (3.00%) of the Sale price paid by the Successful Offeror (the "***Private Sale Fee***").

   c.      <u>Settlement Statement</u>. Any Buyer's Premium or Private Sale Fee due pursuant to this Agreement, and the respective disbursements therefrom, shall be reflected on any settlement statement issued for the Property regardless of who is paying the Buyer's Premium or Private Sale Fee. The Owners hereby authorize Concierge to provide the Escrow Agent with a breakdown of all fees and commissions to be paid. The



6

Owners also authorize the Escrow Agent to provide Concierge with a copy of the settlement statement for the Property without any further instructions or authorizations.

d. <u>Distribution</u>. The distributions required pursuant to this <u>Section 9</u> of this Agreement shall be paid at Closing from the gross sale proceeds prior to the distribution of any Sale Proceeds to the Owners. With respect to any Credit Bid, all payments owed to Concierge shall be wired to Concierge pursuant to wire instructions provided by Concierge by wire transfer of immediately available funds prior to the Property conveyance.

e. <u>Protection Period</u>.  In the event that the Property is not sold at Auction, fails to close due to a default by either the buyer or Owners, Owners do not authorize Concierge to commence the Auction or this Agreement is otherwise terminated and the Property is contracted to be sold or otherwise Transferred by any Owner during the 90-day period after the expiration or termination of this Agreement to anyone, Owners will be obligated to pay Concierge at closing a fee equal to the greater of (i) 50% of the amount of Buyer Premium as if the Property had sold at Auction; or (ii) two hundred thousand dollars ($200,000). A "***Transfer***" as used in this paragraph shall mean the sale or transfer of any part of the Property, include, without limitation, any long-term lease or other form of conveyance by Owners intended to accomplish the substantial equivalent of a Sale of such Property. After (x) execution of a purchase and sale agreement by the applicable Owner(s) and the buyer, and (y) entry of a Sale Order by the Bankruptcy Court, if the Sale of the Property does not close due to the actions of the Owners or its agents or assigns, the Owners shall pay Concierge the amount to which Concierge would have been entitled under this <u>Section 9</u> if the Sale had closed. The Owners shall be obligated to provide Concierge with a copy of the purchase and sale contract promptly following the Owners' execution thereof.

f. <u>Bidder's Auction Deposits</u>. Owners acknowledge and agrees that Escrow Agent shall hold any amounts which bidders place on deposit in order to bid for the Property, (the "***Bidder Deposit(s)***", which, for the avoidance of doubt is distinct from any earnest money deposit provided in accordance with the terms of the Purchase and Sale Agreement (the "***Earnest Money Deposit***") and that any Bidder Deposit held on behalf of a winning bidder shall be released to Concierge immediately following the conclusion of the Auction, and in no event later than the closing of the Property sale, and shall be applied to the applicable Buyer's Premium, subject to any Buyer default provision contained herein.

10.    **BUYER DEFAULT**.  If the Auction is conducted and the winning bidder (the "***Buyer***") defaults, whether or not the parties enter into the Purchase and Sale Agreement, then, except as described below in the case of a back-up bidder, Concierge and Owners shall equally (50% to Concierge and 50% to Owners) any Earnest Money Deposit made by the Buyer in connection with the sale of the Property (or any other amounts collected from the Buyer) (collectively the "***Deposit Amount***") (subject to applicable laws) and subject to the provision provided below which allows Concierge to first make adjustments and concessions if the Property is then sold to a back-up bidder, after any attorney's fees and other expenses incurred by Concierge in connection with the winning bidder's default have been deducted by Concierge. In addition, Concierge shall have the right to declare the second highest bidder as the back-up bidder and buyer of the Property (the "***Back-Up Buyer***") and (ii) the Back-Up Buyer shall be required to keep its bid open and irrevocable and to allow the Escrow Agent to maintain any deposits made by the Back-Up Buyer in connection with the sale of the Property (or any other amounts collected from the Buyer) (collectively the "***Back-Up Deposit Amount***") (subject to applicable laws) for a period of 45 days following the close of the Auction.  If after the Auction, the Buyer defaults, Concierge shall declare the Back-Up Buyer to be the buyer of the Property within no more than 45 days after the completion of the Auction, provided that (i) the Court approves the Back-Up Buyer as the buyer of the Property and (ii) such back-up bid will result in Owners receiving net proceeds at least equal to the net proceeds Owners would have received in a sale of the Property to the winning Buyer (after considering Owners' retention of the Deposit Amount).  In the event (i) Concierge declares the Back-Up Buyer to be the buyer of the Property, (ii) the Court approves the sale of the Property to the Back-Up Buyer, and (iii) the sale of the Property to the back Back-Up Buyer closes, then, notwithstanding anything to the contrary in this section, Owners acknowledge that Concierge will be permitted to apply any Deposit Amounts or to rebate a portion of its Buyer's Premium in order to make-up any difference between the Buyer and Back-Up Buyer's bid and so long as Owners are collectively made

7

whole (meaning that the sale of the Property to the Back-Up Bidder is financially equivalent (in terms of net sale proceeds collectively to the Owners) to the sale to the winning bidder), Owners shall have no additional right to any portion of the defaulting Buyer's Deposit Amount. In the event Owners receive equivalent net proceeds from the Back-Up Buyer then Owners acknowledge that Owners will not be entitled to any portion of the Deposit Amount. In that case, Owners shall comply with the terms of this Agreement and the Purchase and Sale Contract as to such back-up bidder. In the alternative, Concierge shall have the right at no additional cost, in its sole discretion, to conduct another Auction of the Property at any time within the 60-day period after Concierge determines that Buyer has defaulted pursuant to the Bidder Terms and Conditions or the Purchase Contract. Owners acknowledge and agree that the subsequent Auction shall automatically open if a new or additional bid is received by Concierge at or above the high bid amount contained in the prior-authorized Auction Open Acknowledgement. Notwithstanding the foregoing, Concierge shall have no obligation to initiate legal action or otherwise to pursue any action to enforce Buyer's or Back-Up Buyer's obligations under any Purchase and Sale Contract and shall not have any liability whatsoever for Buyer's failure to perform thereunder.

11.    **INDEMNIFICATION; LIMITATION OF LIABILITY**.  The Owners shall indemnify, defend (by counsel reasonably satisfactory to Concierge) and hold harmless Concierge and its members, officers, employees, agents and representatives (collectively, the "*Concierge Indemnitees*," and each an "*Concierge Indemnitee*"), against any claim, demand, cause of action, loss, liability, deficiency, fine, penalty, damage or expense (including, without limitation, reasonable attorney's fees and costs and including interest and penalties) (each, a "*Loss*") which any Concierge Indemnitee may suffer, incur, sustain or become subject to, as a result of or in connection with: (i) any breach by the Owners of any representation, warranty, obligation or covenant set forth in this Agreement; (ii) any material breach by the Owners of any Purchase and Sale Contract entered into with any High Bidder that results in a Sale approved by the Bankruptcy Court not closing, (iii) any breach by any Owner of the listing agreement with the Listing Broker; or (iv) any claim from any third party related to the condition of the Property or damage or injury sustained by the third party on, or with respect to, the Property; *provided*, *however*, that to the extent that the Owners do not consummate a Sale, or, alternatively, consummate a Sale to Bay Point comprised completely of Bay Point's Credit Bid and Bay Point is not subsequently required to remit any funds to Owners on account of such Credit Bid, Bay Point shall assume liability to Concierge for the indemnification obligations of Owners hereunder — the Owners having no further liability with respect to the same. Notwithstanding the foregoing, Concierge shall not be responsible for damage or injury to the Property resulting from or arising in connection with the sale of the Property, and Owners acknowledge and agree to the same, except to the extent that such damage or injury is proximately caused by Concierge's gross negligence or willful misconduct. Except as set forth herein, Concierge shall not be liable for any loss suffered by the Owners relating to the Property, including but not limited, to a High Bidder that refuses to enter into a Purchase and Sale Contract or to perform its obligations.

Concierge's maximum liability for the breach of any obligation in connection with this Agreement, the Auction and the sale of the Property, and for damages of any type or nature (whether in contract or in tort, compensatory, consequential or punitive in nature) sustained or claimed by the Owners or any other person in connection with this Agreement, even if such party shall have been informed of the possibility of such damages or could have foreseen such damages, shall be limited to the greater of (i) the compensation actually received by Concierge under this Agreement; and (ii) the limits of liability insurance available to Concierge. Owners hereby agree and acknowledge that in no event shall Concierge be liable to any Owner for any indirect, incidental, consequential, special or punitive damages under this Agreement or at law arising out of any breach of Concierge's obligations in connection with this Agreement.

Any claim the Owner may have arising from, or in connection to this Agreement, the Property or the Auction shall be commenced against Concierge within two (2) years from the date when the cause of action accrued. Any claim made after two (2) years from the date when the cause of action accrued shall be permanently barred.

12.    **CANCELLATION, TERMINATION & SURVIVAL**.  This Agreement shall terminate on the earlier of the following (i) the date of the Closing of the sale of the Property including the remittance of the amounts due under Section 9 of this Agreement); or (ii) the date of delivery of written notice of termination to the other Party. Concierge may elect to terminate this Agreement at any time, provided written notice of termination is delivered to Owner,

8

and this Agreement shall terminate on the date provided in the notice and Concierge shall promptly inform all registered and prospective bidders of such termination. The obligations and representations contained in Sections 4, 6, 7(a), 7(b), 9, 10, 11,  12, 13, 15, 17, 19, 20, 21, 22, 24, 25, 26, 27, and 29 shall survive the termination of this Agreement for any reason.

**13.**     **NOTICES**. Any notice under this Agreement (including but not limited to notice of cancellation) shall be in writing and shall be delivered to each of the following:

> Concierge Auctions, LLC
> notices@conciergeauctions.com
> (or by facsimile at 888-317-9503)
>
> *-and-*
>
> Anthony Capobianco and Nicole King
> Capobianco Law Offices, PC
> 41990 Cook Street, Suite F2006
> Palm Desert, California 92211
>
> *-and-*
>
> Debtors:
>
> Ronald S. Leventhal
> Manager,  Fulcrum Member, LLC
> 3600 Dallas Highway, Suite 230
> Marietta, Georgia 30064

To the extent that a physical address and an email address are provided above, delivery shall be by overnight delivery, with confirmation of delivery, by United States mail or any nationally recognized commercial carrier. Any notice hereunder shall be deemed to have been given upon the later of (i) dispatch, if transmitted by electronic mail or facsimile; and (ii) upon delivery, if delivered by physical mail.

**14.**     **ENTIRE AGREEMENT**. This Agreement and the related Exhibits/Addenda contain the complete and final obligation and understanding among the Parties relating to the subject matter hereof and merge all prior discussions, negotiations and agreements between them, whether written or oral, and the parties shall not be bound by any representations, warranties, covenants, or other understandings, except as expressly provided or referred to herein.

**15.**     **ASSIGNMENT**. This Agreement may not be assigned by any Party without the prior written consent of all of the other Parties hereto, except that Concierge may assign this Agreement at any time to any of its affiliates.  This Agreement shall be binding upon and inure to the benefit of the Parties and their successors, heirs, representatives, and permitted assigns.

**16.**     **AMENDMENT**. This Agreement may be amended or modified only in writing signed by both Parties and approved by the Bankruptcy Court, if necessary.

**17.**     **TECHNOLOGY**. The Owners acknowledge that the Auction may be conducted, at least in part, online over the Internet, through Concierge's Digital Bidding Platform and that it may utilize third party technology in order to conduct the Auction and/or to accept bids. CONCIERGE DOES NOT WARRANT THAT THE FUNCTIONS, FEATURES OR CONTENT CONTAINED IN ITS WEBSITE OR ANY AUCTION PLATFORM, APPLICATION OR BIDDING SOFTWARE, INCLUDING, WITHOUT LIMITATION, ANY THIRD-PARTY SOFTWARE, TECHNOLOGY, PRODUCTS OR OTHER MATERIALS



9

USED IN CONNECTION WITH THE AUCTION, WILL BE TIMELY, SECURE, UNINTERRUPTED OR ERROR-FREE, OR THAT DEFECTS WILL BE CORRECTED.

**18.     VENUE; PREVAILING PARTY**. The Parties agree to submit all controversies, disputes, claims and matters of difference arising out of or relating to this Agreement, including but not limited to its enforcement, scope and/or interpretation, as a core proceeding exclusively in the Bankruptcy Court and agree to submit to personal jurisdiction in the Bankruptcy Court, sitting without a jury, which is expressly waived. In the event of any such legal action, the prevailing Party shall be entitled to reimbursement from the non-prevailing Party of all reasonable attorney's fees and costs/expenses of the prevailing Party and any award of the Bankruptcy Court will include costs and reasonable attorneys' fees to the prevailing party.

**19.     SEVERABILITY**.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of this Agreement.

**20.     GOVERNING LAW**.  This Agreement has been entered into and shall be construed and enforced in accordance with the laws of the State of New York, without regard to conflicts of law principles.

**21.     FORCE MAJEURE.** Concierge and the Owners will not be liable or responsible nor be deemed to have defaulted or breached this Agreement for any failure or delay in performance under this Agreement when and to the extent such failure or delay is materially interrupted or caused by or results from acts or circumstances beyond Concierge's or the Owners' reasonable control, including, without limitation, acts of God, flood, hurricane, typhoon, fire, earthquake, explosion, governmental actions, war, invasion or hostilities (whether war is declared or not), terrorist threats or acts, riot or other civil unrest, national emergency, revolution, insurrection, pandemic (other than COVID-19 or any related strain of similar virus), epidemic, lockouts, strikes or other labor disputes (whether or not relating to our workforce), or restraints or delays affecting carriers or inability or delay in obtaining supplies of adequate or suitable materials, materials or telecommunication breakdown or power outage, linking to the website and social media features (each such event, a "**Force Majeure Event**"). Upon the occurrence of a Force Majeure Event, the party hereto experiencing such Force Majeure Event shall be extended for a reasonable time necessary to accommodate for the duration of such Force Majeure Event.

**22.     LICENSING/BONDING**. Licenses and bonds are routinely updated. For Concierge's current licensing and bonding information, follow the following weblink: www.ConciergeAuctions.com/licenses, or contact compliance@conciergeauctions.com.

**23.     COUNTERPARTS AND EXECUTION**. This Agreement, including any riders, amendments, and/or additions, may be executed by electronic, facsimile, or PDF signature and/or in any number of counterparts and each of such electronic, facsimile, or PDF signature and/or counterpart shall for all purposes be deemed to be an original; and all such electronic, facsimile, or PDF signatures and/or counterparts shall together constitute but one and the same Agreement.

**24.     JOINT DRAFTING.**  The Parties have been given the opportunity to seek legal advice and to have this Agreement reviewed by an independent attorney prior to signing it. This Agreement shall be construed as if it has been jointly drafted by both Parties.  Any rule of construction to the effect that ambiguities are to be resolved against the drafting Party shall not be applied in interpreting this Agreement.

**25.     WAIVER.** No delay or omission to exercise any right, power, or remedy accruing to Concierge or the Owners under this Agreement shall impair any right, power, or remedy of Concierge or the Owners, nor shall it be construed as a waiver of, or consent to, any breach or default. No waiver of any breach, any failure of a condition, or any right or remedy under this Agreement (1) shall be effective unless it is in writing and signed by Concierge or the Owners, as applicable; (2) shall be deemed to be a waiver of, or consent, to any other breach, failure of a condition, or right or remedy, or (3) shall be deemed to constitute a continuing waiver unless the writing expressly so states.



10

**26.**     **TIME OF THE ESSENCE.** Time is of the essence in respect to all provisions of this Agreement that specify a time for performance.

**27.**     **FURTHER ASSURANCES**. Each of the Parties shall take such other actions and execute such documents consistent with this Agreement as may be reasonably requested to do any of the following: market the Property for Sale, conduct the Auction, transfer ownership of the Property to the High Bidder at or after Closing, and complete the Sale(s) of the Property. If furtherance of the foregoing, the Owners hereby grant Concierge permission to engage with the Owners' representatives, at the Owners' sole expense, to prepare the Purchase and Sale Contract consistent with the terms of this Agreement and the Approved Bid Procedures.

**28.**     **INDEPENDENT LEGAL ADVICE; CONSTRUCTION.**  This Agreement is an important legal document. Each Party acknowledges that it has been advised to consult legal counsel before signing this Agreement and has signed this Agreement after having the opportunity to consult with legal counsel of its choosing. No Party has provided legal advice (including but not limited to tax advice) to another Party or acted as legal counsel to another Party. Each Party hereby confirms that it has carefully read this Agreement in its entirety and that it understands all of its terms, and knowingly and voluntarily agrees to all of the terms and conditions contained herein.

**29.**     **CONTRIBUTION TO KEY-FOR-KEY**. Concierge engages in charitable giving via its Key-For-Key® program through Giveback Homes https://givebackhomes.com/. For every property Concierge auctions, it makes a donation to help build a home for those in need. Owner may elect to donate to Concierge's Key-For-Key® program by selecting an amount on the signature page below. By making an election, Owner acknowledges and instructs Escrow Agent to direct that portion of the Owner's proceeds at closing to Key-For-Key® and Giveback Homes.

[*Signature Page to Follow*]

11

Subject to approval by the Bankruptcy Court, by signing below, the Owners and Concierge acknowledge that they have carefully read, understand, and agree to be bound by the terms and conditions of this Agreement, any related documents, exhibits and addenda, all of which form the Agreement between Concierge and the Owners. The Owners and Concierge acknowledge that they have been given the opportunity to seek legal advice and to have this Agreement reviewed by an independent attorney of their choice prior to signing it.

**CONCIERGE AUCTIONS, LLC**

By: _Chad Roffers_
Chad Roffers (Sep 3, 2025 15:06:56 MDT)
Name: Chad Roffers
Title:   CEO

**FULCRUM LOAN HOLDINGS, LLC**

By: _____
Name:  Ronald S.      Leventhal
Title:   Manager of Managing Member

**FULCRUM TALE LLC**

By: _____
Name: Ronald S.      Leventhal
Title:   Manager of Managing Member

**STRATEGIC RETREAT HOLDINGS, LLC**

By: _____
Name: Ronald S.      Leventhal
Title:   Manager of Managing Member

**HIP II, LLC** f/k/a Hampton Island Preserve II, LLC

By: _____
Name: Ronald S.      Leventhal
Title:   Manager of Managing Member

**JARBAI, LLC**

By: _____
Name   Ronald S.      Leventhal
Title:   Manager of Managing Member

<u>EXHIBIT A</u>

The Property sold at Auction shall be comprised of no less than the following parcels located on Hampton Island owned by the following owner entities (collectively, the "**Core Assets**"):

1.   Fulcrum Loan Holdings, LLC: all parcels conveyed by deed on October 2013;

2.   Fulcrum Tale, LLC: all parcels

3.   Strategic Retreat Holdings, LLC: all parcels;

4.   HIP II, LLC f/k/a Hampton Island Preserve II, LLC: all parcels; and

5.   Jarbai, LLC: all parcels. – *Owen April 30, 2017*



13

EXHIBIT B

BIDDER TERMS AND CONDITIONS

CONCIERGE
AUCTIONS

**CONCIERGE AUCTIONS, LLC**
**UNIVERSAL BIDDER TERMS AND CONDITIONS**

**Rev 3-1-25**

Concierge Auctions, LLC and/or its affiliates or subsidiaries (if any Property is located in Canada then, Concierge Auctions, ULC) (collectively, "***Concierge***," "***we***," "***us***") through the www.conciergeauctions.com website and Concierge's digital  bidding platform, including any third-party software Concierge utilizes to operate its website, bidding and other services (collectively, the  "***Website***") or any services provided in connection with the Website (the "***Services***") and the use of the Website including any content,  functionality on or through the Website, whether as a guest or a registered user, are governed by these Terms and Conditions (together with all  separate documents/pages linked to these terms and incorporated by reference, the "***Terms and Conditions***" or "***Agreement***"). By accessing or using the Website or the Services, you ("***Bidder***" or "***you***") agree that:

(1.) You have read and familiarized yourself with these Terms and Conditions;
(2.) You understand the Terms and Conditions; and
(3.) You agree to and are bound by the Terms and Conditions in your use of the Website and the Services.

IF YOU DO NOT AGREE TO THESE TERMS AND CONDITIONS, DO NOT USE THE WEBSITE OR THE SERVICES AND DO NOT PARTICIPATE IN ANY CONCIERGE AUCTION. YOUR USE OF THE WEBSITE AND/OR YOUR PARTICIPATION IN ANY AUCTION, CONSTITUTES YOUR ACCEPTANCE OF AND AGREEMENT TO COMPLY WITH THESE TERMS AND CONDITIONS. These Terms and Conditions constitute a binding contract and the entire agreement between you and Concierge regarding their subject matter and supersede and replace any and all prior or contemporaneous agreements between the parties regarding such subject matter.

1. **CHANGES TO WEBSITE AND TERMS AND CONDITIONS.** Concierge may revise and update these Terms and Conditions and the content on the Website from time to time in its sole discretion. All changes are effective immediately when posted and apply to all access to and use of the Website and the Services thereafter.  We also reserve the right to withdraw or amend the Website, and any Service we provide, in our sole discretion without notice. Any of the material on the Website may be out of date at any given time, and we are under no obligation to update such material.  Your continued use of the Website and the Services following the posting of revised Terms and Conditions means that you accept and agree to the changes. You are expected to review these Terms and Conditions periodically, so you are aware of any changes, as they are binding on you. If at any time you find these Terms and Conditions unacceptable, you must immediately leave the Website and cease all use of the Services and the Website. In the event that you have executed a prior version of the Terms and Conditions, the most recent version of the Terms and Conditions as evidenced by the Rev Date and posted to the Website prior to your continued use of the Website or Services shall be deemed accepted by Bidder and shall be controlling.

2. **REGISTRATION AND ELIGIBILITY**. The Website and the Services are only available to persons with the legal capacity to enter into this Agreement, to be bound by these Terms and Conditions, and to purchase real estate. The Website is intended for use only by persons over 18 years of age.  Concierge may, at its sole and absolute discretion, refuse to accept your registration, and may, at any time after accepting registration, refuse to permit a Bidder's continuing use of the Website or the Services for any reason or no reason at all. Tampering with the Website, misrepresenting the identity of a Bidder or conducting fraudulent activities on the Website are prohibited.

   You may also be required to provide Concierge official documents showing your identity (including your beneficial owners if applicable) to facilitate Concierge's compliance with its anti-money laundering, sanctions and anti-terrorism financing obligations. Those official documents of identity shall be certified by a professional acceptable to Concierge, if Concierge so requests. If Concierge has not completed its inquiries in respect of anti-money laundering, sanctions and anti-terrorism financing or other checks as it considers appropriate at its discretion, Concierge shall be entitled to deny your registration without any liability to you.

3. **ACCESSING THE WEBSITE AND ACCOUNT SECURITY**. We will not be liable if for any reason all or any part of the Website is unavailable at any time or for any period. From time to time, we may restrict access to some parts of the Website, or the entire website, to users, including registered users. You are responsible for:

   **3.1.**  Making all arrangements necessary for you to access the Website.
   **3.2.**  Ensuring that all persons who access the Website through your internet connection or using your personal information are aware of these Terms and Conditions and comply with them.

   To access the Website or some of the resources it offers, you may be asked to register by providing certain personal details or other information.  It is a condition of your use of the Website that all the information you provide on the Website is correct, current and complete. You agree that all information you provide to register with this Website, to use the Services or otherwise, including through the use of any interactive features on the Website, is governed by our Privacy Policy, and you consent to all actions we take with respect to your information consistent with our Privacy Policy. Our Privacy Policy is expressly incorporated into these Terms and Conditions by this reference.

   If you choose, or are provided with, a username, password or any other piece of information as part of our security procedures, you must

treat such information as confidential, and you must not disclose it to any other person or entity. You also acknowledge that your account is personal to you and agree not to provide any other person with access to this Website or portions of it using your username, password or other security information. You may be held liable for any losses incurred by Concierge, its affiliates, officers, directors, employees, consultants, agents, and representatives due to someone else's use of your account or password. You agree to notify us immediately of any unauthorized access to or use of your username or password or any other breach of security. You also agree to ensure that you exit from your account at the end of each session. You should use particular caution when accessing your account from a public or shared computer so that others are not able to view or record your password or other personal information. You may not use the account, username, or password of someone else at any time.

We have the right to disable any username, password or other identifier, whether chosen by you or provided by us, at any time in our sole discretion for any or no reason, including if, in our opinion, you have violated any provision of these Terms and Conditions.

4.  **ELECTRONIC COMMUNICATIONS.** When you visit the Website or send e-mails to us, you are communicating with us electronically and you consent to receive electronic communications from us. We will communicate with you by e-mail or by posting notices on this Website. You agree that all agreements, notices, disclosures and other communications that we provide to you electronically satisfy any legal requirement that such communications be in writing.

5.  **PROPERTY AUCTION DETAILS.** From time to time, Concierge will present certain properties (each, a "*Property*") for sale by auction through the Website or Concierge's digital bidding platform (an "*Auction*") on behalf of the seller of each Property (each, a "*Seller*"). The Terms and Conditions and all other publicized elements of the Auction are subject to amendment by the posting of notices or by oral announcements made before or during the Auction. By participating in the Auction, you acknowledge and agree that you are bound by any additional terms that may be imposed by Concierge and the Property Seller and announced prior to or at the Auction either on the Property specific web page for the particular Auction, or otherwise. Please refer to each Property-specific web page on the Website for the following Auction-specific details, among others:

    Auction Method (absolute or reserve, subject to confirmation, etc.);
    Auction commencement date and duration;
    Amount of Buyer's Premium;
    Starting Bid Incentive, if any;
    Broker compensation arrangement(s);
    Whether the Property is being sold furnished or unfurnished;
    Due diligence materials and other Property information;
    HOA and other property ownership restrictions; and
    The form of Purchase and Sale Contract that you are required to sign if you are the winning bidder.

The information on the Property web page may be updated regularly so please check back to that page on a regular basis to be sure you are reviewing the most recent information regarding the Property Auction. Concierge's verbal or written announcements made at the Auction will take precedence over all printed material or other previously made statements. In the event of any conflict between these Terms and Conditions and the Property web page for the Auction, the Property web page shall prevail and control.

6.  **BIDDING.** Bidders act as principal unless they have Concierge's prior written consent to bid as agent for another party. Bidders are personally liable for their bids and are jointly and severally liable with their principal if bidding as an agent for another party. All Auction bidding is open to the public without regard to race, color, sex, religion, familial status, disability or national origin. Concierge controls all aspects of the bidding process and reserves the right to reject any bid in its sole discretion. The Bidder who submits the highest bid acknowledged by Concierge, (the "*High Bid*") or any Back-up Bidder as described below if the primary buyer defaults, will be the buyer of the subject Property, (the "*Buyer*"). By participating in the Auction, you represent, warrant and covenant that any bid you make constitutes an irrevocable offer to purchase the Property for the full amount of the bid and that once a High Bid is accepted, you are obligated to purchase such Property for the amount of the High Bid. In the event of any dispute among Bidders, or in the event of doubt on the part of Concierge as to the validity of any bid, Concierge will have the final discretion to determine the High Bid, the successful Buyer, to cancel the Auction, or to re-auction the subject Property. If any dispute arises after the Auction, Concierge's Auction record shall determine conclusively all bidding issues, including but not limited to the High Bid and the Buyer. You may wish to consult with a licensed real estate broker, adviser, attorney, contractor or other expert prior to your participation in any auction.

Concierge may allow telephonic, electronic, absentee or proxy bids as a convenience to Bidders who are not present at the Auction and/or are not able to use the Website. Concierge is not responsible for any errors or omissions in connection with such bids, including, without limitation, poor connections, Internet outages, poor reception, dropped calls, recording failures, busy signals and missed calls. Furthermore, Concierge does not represent or warrant that the functions, features or content contained in any telephonic bidding, electronic bidding, internet bidding Website or any third-party software, products, or other materials used in connection with internet or electronic bidding, will be timely, secure, uninterrupted or error-free, and Concierge does not represent or warrant that defects will be corrected.

    6.1.  **TELEPHONIC, ELECTRONIC, ABSENTEE OR PROXY BIDS.** With prior written approval, Concierge may allow telephonic, electronic, absentee or proxy bids as a convenience to Bidders who are not present at the Auction and/or are not able to use the Website. Concierge is not responsible for any errors or omissions in connection with such bids, including, without limitation, poor connections, Internet outages, poor reception, dropped calls, recording failures, busy signals and missed calls. Where you are bidding on behalf of

2

another person or acting as agent for another party, you represent in your own capacity that your principal(s) is not a Sanctioned Person(s) (as defined below) nor owned (or partly owned) or controlled by Sanctioned Person(s) and that the funds used for purchase of the Property and the purchase of the Property are not connected with, nor have any link to any criminal activity, including without limitation tax evasion, money laundering, terrorist activities or other criminal activity. By participating in telephonic bidding either as a bidder or through a proxy you expressly consent to those telephonic calls and messages being recorded and by executing these Terms and Conditions you are providing your express written consent and acknowledgement of telephonic phone recording.

7. **BIDDER REQUIREMENTS.** To qualify to bid at Auction, you must (1) agree to be bound by these Terms and Conditions and any required deposit escrow agreement (the "*Deposit Escrow Agreement*") and (2) pay the sum shown on the applicable Property web page by wire transfer, (the "*Bidder's Deposit*"), into the deposit escrow agent's or notary's, (the "*Deposit Escrow Agent*") bank account per the instructions set forth on the applicable Property web page. The Deposit Escrow Agent shall be set forth on the applicable Property web page or registration documents. If Bidder is the Buyer, the Bidder's Deposit shall be handled in accordance with these Terms and Conditions, the Deposit Escrow Agreement, and the Purchase and Sale Contract. If Bidder is not the Buyer or the Back-up Bidder, then the Bidder's Deposit shall be refunded by 5:00 p.m. local time in the time zone where the Property is located ("*Local Time*") on the third business day following the conclusion of the Auction, except as otherwise provided herein or on the applicable Property web page. Wires must be received in US Dollars and will be returned in US Dollars. You acknowledge that foreign currency exchange rates may go up or down over time and that you shall bear the risk and uncertainty associated with currency rate fluctuations. Concierge shall have no liability whatsoever for any shortfall due to foreign currency exchange rate fluctuations.

8. **BUYER'S PREMIUM.** For each Property purchased, Buyer shall pay to Concierge a "*Buyer's Premium*" generally calculated as a percentage of the High Bid. To determine the amount of the Buyer's Premium for a particular property, please visit the applicable property web page at www.conciergeauctions.com. Buyer acknowledges and agrees that the Buyer's Premium is deemed earned upon conclusion of the Auction and shall be held by the escrow agent or applicable closing agent listed in the Purchase and Sale Contract (the "*Escrow Agent*"), and disbursed to Concierge by Escrow Agent at, or prior to closing. If the sale of the Property is not consummated for any reason other than default by the Seller, the Buyer's Premium shall nonetheless be due and payable to Concierge and this Agreement constitutes a joint written irrevocable instruction to the Escrow Agent to disburse those funds to Concierge and to pay on your behalf any VAT or other tax due in connection with the Buyer's Premium.

   8.1. **ACKNOWLEDGMENT OF NO FIDUCIARY DUTY.** The Buyer's Premium is not a real estate commission; it is the fee that Concierge charges to bidders for bringing the Property to auction. Any applicable real estate commissions will be determined by the parties in a separate agreement in escrow. You agree and acknowledge that Concierge is acting solely in its capacity as an auctioneer and does not have a duty to act, nor will it act, in a fiduciary capacity to any Bidder. Concierge is not acting as a real estate agent or broker in any capacity for any party, including any Bidder or for the Seller; and Concierge is not involved in any way or in connection with the closing or completion of any real estate transaction and all such real estate brokerage, closing, and escrow functions will be handled exclusively by third-party real estate brokers or other professionals.

   8.2. **PAYMENT OF TAXES.** If any VAT (value added tax), General Excise Tax (GET), or similar tax is due in connection with the payment of the Buyer's Premium, it shall be Buyer's sole obligation to pay all taxes. If the Property is located in the state of Hawaii, Concierge shall add any Hawaii GET tax to the total of the Buyer's Premium at the then-applicable maximum pass-on rate(s) as promulgated by the state and local jurisdictions, found here: https://tax.hawaii.gov/geninfo/countysurcharge/.

   8.3. **SPECIAL PROVISIONS RELATED TO PROPERTIES LOCATED OUTSIDE OF THE UNITED STATES.** If the Property which is being Auctioned is located outside of the United States, the ("*Global Properties*") The Buyer acknowledges and agrees that the Buyer's Premium plus any VAT or applicable Excise taxes on the Buyer's Premium shall be due and payable at the end of the Auction. The Buyer shall arrange a wire transfer to Concierge of the amount of the Buyer's Premium converted and denominated in US Dollars (with such conversation rate as of the date of the Auction closing), less the Bidder's Deposit and any Starting Bid Incentive, by no later than 5:00 p.m. Local Time two Business Days following the end of the Auction. If closing does not occur as a result of the Buyer's default, the Buyer's Premium shall nonetheless be due and payable by the Buyer to Concierge.

9. **STARTING BID INCENTIVE.** If you submit a starting bid for a Property, and you are the high bidder at the Auction, you may qualify for an Incentive from Concierge in the form of a credit to reduce the Buyer's Premium by up to 50% of the Buyer's Premium related to the Starting Bid Amount. To determine whether there is a Starting Bid Incentive for a particular property, please visit the applicable property web page on the Website.

   9.1. **QUALIFYING FOR A STARTING BID INCENTIVE.** In order to qualify for the Starting Bid Incentive, your starting bid must be submitted in writing via email to Concierge at register@conciergeauctions.com, or directly to a Concierge representative, and must be received prior to 5:00 p.m. Local Time on the day before the scheduled Auction date. Concierge may, in its discretion, accept pre-auction bids after the deadline described above. Concierge may also, in its discretion, offer additional incentives to one or more pre-auction bidders, including but not limited to guarantees and purchase terms that differ from the Purchase and Sale Contract.

   A Starting Bid shall be considered the Bidder's initial bid at the Auction. Bidder understands that any Starting Bid is legally binding and irrevocable. Bidder further understands that a Bidder who submits a Starting Bid that qualifies for the Starting Bid Incentive may be required to complete and sign the residential purchase and sale contract form and any other documents related to the sale of the Property provided on the applicable Property web page (the "**Purchase and Sale Contract**") in the Purchase Price amount of such Starting Bid prior to Auction Day. You hereby acknowledge that you have reviewed the applicable Purchase and Sale Contract, you agree to execute the Purchase and Sale Contract upon request, to make any additional earnest money deposits required under the Purchase and Sale Contract, and further understand that the Purchase and Sale Contract will be legally binding once executed by you.

3

The Starting Bid Incentive shall not apply to any Purchase and Sale Contract executed other than to the Purchase and Sale Contract between Buyer and Seller executed on or about the date of the Auction, including any back-up buyer contract.

If the same Starting Bid Amount has been submitted by more than one Bidder, the first-in-time qualifying form received by Concierge will be given precedence, as determined by Concierge.

10. **BID ACCEPTANCE; COMPLETION; AUCTION METHODS**. Once bidding is complete and the Buyer is identified by Concierge, Buyer will be required immediately to execute the Purchase and Sale Contract, Escrow Instructions, and other documents required by the escrow or closing agent or otherwise in connection with the purchase of the Property, if Buyer has not previously done so as part of the bidder registration process. The Buyer of a Property shall initiate and deliver a wire transfer to Escrow Agent for its earnest money deposit of up to fifteen percent (15.00%) of the Purchase Price (the "***Deposit***"), along with the executed Purchase and Sale Contract, escrow instructions, and other documents reasonably required by the Escrow Agent on or before 5:00 p.m. Local Time on the second business-day following the date Concierge names the Bidder the winning Bidder and Buyer of the Property. For the exact amount of the Deposit, please consult the relevant Property Purchase and Sale Contract. Concierge may, in its discretion, extend this deadline. Bidder acknowledges that its failure to execute the Purchase and Sale Contract or any other closing documents, or to pay the full Deposit is a material breach of this Agreement that will result in the immediate forfeiture of the Bidder's Deposit, amongst other remedies in law and equity.

   10.1. **RESERVE AUCTIONS.** Certain Properties will be offered for sale at Auction without reserve and will be sold to the Bidder who made the High Bid. Other Properties will be offered for sale at Auction with reserve or minimum prices that are either disclosed or confidential (each, a "***Reserve***"). In a Reserve auction, if the High Bid is equal to or greater than the Reserve, then the Property will be sold to such Bidder. If the High Bid is below the Reserve, then the Seller may accept, counter, or reject the High Bid or before 5:00 p.m. Local Time on the next business day following the Auction. In the event a Reserve Seller chooses to reject the High Bid, Buyer will receive a refund of the Bidder's Deposit on the third business day following the Auction date. Unless otherwise specified, all auction Properties are offered subject to a Reserve. In order to determine the applicable auction method for a particular Property, please visit the applicable Property's web page.

   10.2. **CREDITOR APPROVALS AND CONFIRMATIONS.** The sale of certain Properties may require post-auction court or lender approval or confirmation. To determine whether the sale of the Property on which you are bidding requires approval or confirmation, please visit the applicable Property web page and reference the Property's Purchase and Sale Contract. If you are the high bidder on any such Property, your bid remains irrevocable while the Seller seeks approval or confirmation of your High Bid. Concierge shall have no liability if you have placed a bid for the Property, or you are the winning Bidder, without having first satisfied yourself as to whether the sale of the Property requires post-auction court or lender approval or confirmation.

   10.3. **BACK-UP BIDDER; IRREVOCABLE BID.** Concierge shall have the right to declare any bidder including you, who has submitted a binding and irrevocable bid to be (the "***Back-up Bidder***") at the conclusion of the Auction. If the initial Buyer defaults under these Terms and Conditions and/or the applicable Purchase and Sale Contract, Concierge shall have the right to declare the Back-up Bidder to be the Buyer of the Property on or before the fifth business day following the completion of the Auction, (the "***Post-Auction Window***"). All bids shall remain effective and irrevocable during the Post Auction Window. Once the Back-up Bidder has been declared the Buyer, it shall immediately execute all documents pursuant to these Terms and Conditions and the applicable Purchase and Sale Contract.

11. **OPERATION OF PURCHASE AND SALE CONTRACT.** Specifically and exclusively related to the governance of the relationship between Buyer and Seller, the Purchase and Sale Contract supersedes any and all other documents or information (including without limitation these Terms and Conditions) and serves as the definitive document for the purchase and sale of the Property as between Buyer and Seller. Concierge is not a party to the Purchase and Sale Contract. Concierge does not guarantee that the sale of any Property will be consummated or that any party will perform its obligations under the Purchase and Sale Contract.

   11.1. **PURCHASE PRICE; AMOUNT DUE FROM BUYER.** The term "***Purchase Price***" shall mean the High Bid, excluding other amounts payable by the Buyer in connection with closing, such as customary closing costs, escrow/closing fees, VAT, property taxes, insurance, transfer fees/taxes in accordance with the Purchase and Sale Contract. Buyer's total obligation toward the purchase of the Property is equal to the Purchase Price, the Buyer's Premium and those customary closing costs, including without limitation payment of any VAT in connection with Buyer's purchase and the Buyer's Premium. All Bidders are strongly encouraged to review the Purchase and Sale Contract prior to bidding and to consult with an attorney or other professionals.

   11.2. **CLOSING.** Closing will take place in accordance with the Purchase and Sale Contract and any related documents. Unless otherwise stated on the applicable Property web page, escrow and closing services shall be provided exclusively by the third parties listed on the applicable Property web page or in the Purchase and Sale Contract.

      11.2.1. **CLOSING DATE**. The date of closing or completion of the purchase of the Property between Buyer and Seller shall be the "***Closing Date***" set forth in the applicable Purchase and Sale Contract. In certain cases, Seller may extend the Closing Date pursuant to the Purchase and Sale Contract or as otherwise negotiated between Seller and Buyer.

12. **DEFAULT**. Your failure to comply with these Terms and Conditions will result in a default being declared and the Bidder's Deposit, the Deposit and Buyer's Premium shall be forfeited and retained by Seller and/or Concierge in addition to other equitable and legal remedies under applicable law all of which are reserved. In addition, to mitigate potential damages, Concierge and the Seller reserve the right to declare any other bidder to be the Back-up Bidder and Buyer of the Property on or before the fifth business day following the completion of the Auction, as set forth above.

4

13. **AUCTION PROCEDURES**. Concierge reserves the right to waive or modify any previously announced requirements. Concierge reserves the right in its sole discretion to accept or reject any bids made before the Auction begins. Method of the Auction, order of Auction, and bidding increments shall be determined by Concierge in its sole discretion, including, without limitation, Concierge's right to pause and resume bidding during the Auction. Concierge reserves the right to reject any bid that is only a minimal increase over the preceding bid, or that Concierge believes was made illegally or in bad faith. Concierge may place bids on Seller's behalf so long as such bids do not exceed any applicable Reserve Price or the amount of the highest Starting Bid. All decisions of Concierge are final as to bidding issues, cancellation or any other matters that may arise before, during or after the Auction. If Concierge perceives attempted collusion, Concierge will cancel the Auction or refuse to accept a bid. Collusion between bidders is prohibited by various applicable laws. Concierge reserves the right to deny any person admittance to the Auction or expel anyone who Concierge believes may disrupt, cause any nuisance or interfere with the Auction in any way or for any other reason in Concierge's discretion. The Auction does not begin until Concierge accepts the first bid on the day of the Auction and acknowledges the Auction opening.

Concierge reserves the right to modify or amend any terms of the Auction, the Auction method or particular conditions of the Auction upon announcement prior to or during the course of the Auction. You should regularly consult the applicable Property web page prior to the date of the Auction for the most up to date information regarding any Property and the Auction, and the Auction method, applicable disclosures and disclaimers, and terms and conditions.

14. **PROPERTY INSPECTION AND DUE DILIGENCE**. Prior to the commencement of the Auction, it is the Bidder's sole responsibility to perform any inspections and due diligence Bidder deems pertinent to the purchase of the Property, to be satisfied as to the condition of the Property prior to bidding and to review all due diligence materials provided with respect to the Property. **Each Bidder assumes any and all** risks **associated with any such inspection and its due diligence activities. The Property, both real and personal (if any), is being sold in its existing "AS IS, WHERE IS, WITH ALL FAULTS" condition, with no expressed or implied guarantees, representations or warranties whatsoever, unless required by law.** Personal on-site inspection of the Property is strongly recommended, and you are advised to independently verify all information about the Property and the Auction that you deem important. Bidder acknowledges that it has reviewed the diligence materials and disclosures provided on the applicable Property web page; however, Concierge assumes no liability for errors or omissions in these disclosures or any other property listings or advertising, promotional or publicity statements and materials which is why it is important to verify independently all such information. Although information has been obtained from resources deemed reliable, Concierge does not make any guarantee as to the accuracy of any such information.

14.1. **OPEN HOUSE**. Each Property is scheduled to have one or more open houses, and/or showings upon request, pursuant to the schedule posted on the applicable Property web page. Open house events are hosted solely by third-party real estate agents and brokers acting on behalf of Seller; Concierge has no responsibility for such open houses, including but not limited to cancellations or changes in time or duration.

14.2. **FIRST AND THIRD PARTY INSPECTION.** In connection with any due diligence, inspection, visit and/or investigation of the Property by you and or any person, entity, or representative acting on your behalf (the "***Inspectors***"), you and the Inspectors shall;

14.2.1.   Ensure that the Property is kept free and clear of liens and encumbrances;

14.2.2.   Ensure that any and all damage arising from such inspection is repaired; and

14.2.3.   Indemnify, defend and hold Seller and Concierge harmless from all liability, claims, demands, damages and/or costs directly or indirectly arising therefrom. Inspectors shall carry, and require anyone acting on Inspector's behalf to carry, policies of liability insurance, property damage insurance, workers' compensation and other applicable insurance with adequate limits, defending and protecting Seller and Concierge from liability for any injuries to persons or property damage occurring during any inspection of the Property.

15. **DISCLAIMER.** WITHOUT LIMITING ANY OTHER PROVISION OF THESE TERMS AND CONDITIONS OR THE PURCHASE AND SALE CONTRACT, ALL BIDDERS ACKNOWLEDGE AND AGREE THAT THEY ARE BIDDING FOR AND, IF THEY ARE IDENTIFIED AS THE HIGH BIDDER BY CONCIERGE, WILL ACQUIRE THE PROPERTY, INCLUDING THE IMPROVEMENTS CONSTRUCTED  ON THE PROPERTY AND ANY APPLIANCES AND BUILDING SYSTEMS, IN ITS "AS IS, WITH ALL FAULTS" CONDITION AS OF AUCTION DAY, WITH ALL DEFECTS, BOTH PATENT AND LATENT, AND WITH ALL FAULTS, WHETHER KNOWN OR UNKNOWN, PRESENTLY EXISTING OR THAT MAY HEREAFTER ARISE (TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW). ALL PROSPECTIVE BIDDERS ACKNOWLEDGE AND AGREE THAT CONCIERGE HAS NOT MADE, DOES  NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATION, WARRANTY, PROMISE, COVENANT,   AGREEMENT OR GUARANTY OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR  WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO THE PROPERTY, INCLUDING  WITHOUT LIMITATION: (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT  LIMITATION, THE WATER, SOIL AND GEOLOGY; (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, IF ANY; (C) THE  SUITABILITY OF THE PROPERTY FOR ANY AND ALL PURPOSES, ACTIVITIES AND USES WHICH BIDDER MAY CONDUCT  THEREON; (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES  OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY; (E) THE HABITABILITY,  MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY; (F)  THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY; (G)  THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY; (H) THE EXISTENCE OF ANY VIEW  FROM THE PROPERTY OR THAT ANY EXISTING VIEW WILL NOT BE OBSTRUCTED IN THE FUTURE; (I) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY, (J) THE STRUCTURAL INTEGRITY OF ANY IMPROVEMENTS ON THE  PROPERTY, (K) THE

CONFORMITY OF THE IMPROVEMENTS TO ANY PLANS OR SPECIFICATIONS FOR THE PROPERTY THAT MAY BE PROVIDED TO BIDDER, (L) THE CONFORMITY OF THE PROPERTY TO APPLICABLE ZONING OR BUILDING CODE REQUIREMENTS, (M) THE EXISTENCE OF SOIL INSTABILITY, PAST SOIL REPAIRS, SUSCEPTIBILITY TO LANDSLIDES, SUBSIDENCE, SUFFICIENCY OF UNDER-SHORING, SUFFICIENCY OF DRAINAGE, OR ANY OTHER MATTER AFFECTING THE STABILITY OR INTEGRITY OF THE LAND OR ANY BUILDINGS OR IMPROVEMENTS SITUATED THEREON, (N) WHETHER THE PROPERTY IS LOCATED IN A SPECIAL STUDIES ZONE UNDER THE PUBLIC RESOURCES CODE OR A SEISMIC HAZARDS ZONE OR A STATE FIRE RESPONSIBILITY AREA, OR A SPECIAL FLOOD HAZARD ZONE OR (O) THE PRESENCE OF TERMITES OR OTHER PESTS AND ANY DAMAGE TO THE PROPERTY AND/OR ITS IMPROVEMENTS THAT MAY HAVE OCCURRED AS A RESULT. BIDDER ACKNOWLEDGES THAT THE PROPERTY AND ITS IMPROVEMENTS MAY NOT BE IN COMPLIANCE WITH APPLICABLE ZONING, BUILDING, HEALTH OR OTHER LAWS OR CODES, AND NEITHER SELLER, CONCIERGE NOR ANY OF ITS REPRESENTATIVES OR AGENTS HAVE OCCUPIED THE PROPERTY AND THE PROPERTY MAY NOT BE IN HABITABLE CONDITION. ALL PROSPECTIVE BIDDERS FURTHER ACKNOWLEDGE AND AGREE THAT, WITHOUT LIMITATION, SELLER AND CONCIERGE HAVE NOT MADE, DO NOT MAKE, AND SPECIFICALLY DISCLAIM ANY REPRESENTATIONS REGARDING COMPLIANCE WITH THE AMERICANS WITH DISABILITIES ACT OR WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION OR LAND USE LAWS, RULES, REGULATIONS, ORDERS OR REQUIREMENTS, AS DEFINED BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY REGULATIONS OR THE DISPOSAL OR EXISTENCE, IN OR ON THE PROPERTIES, OF ANY HAZARDOUS SUBSTANCE, AS DEFINED BY APPLICABLE LAW, INCLUDING THE COMPREHENSIVE ENVIRONMENTAL RESPONSE COMPENSATION AND LIABILITY ACT OF 1980, AS AMENDED, AND REGULATIONS PROMULGATED THEREUNDER. EACH PROSPECTIVE BIDDER AND ANYONE CLAIMING BY, THROUGH OR UNDER THE SAME HEREBY FULLY AND IRREVOCABLY RELEASE SELLER AND CONCIERGE, AND THEIR RESPECTIVE AFFILIATES, EMPLOYEES, OFFICERS, DIRECTORS, REPRESENTATIVES, ATTORNEYS AND AGENTS, FROM ANY AND ALL CLAIMS THAT HE/SHE/IT OR THEY MAY NOW HAVE OR HEREAFTER ACQUIRE AGAINST SELLERS AND/OR CONCIERGE, AND/OR THEIR RESPECTIVE AFFILIATES, EMPLOYEES, OFFICERS, DIRECTORS, REPRESENTATIVES, ATTORNEYS AND AGENTS, FOR ANY COST, LOSS, LIABILITY, DAMAGE, EXPENSE, DEMAND, ACTION OR CAUSE OF ACTION ARISING FROM OR RELATING TO THE CONDUCT OF THE AUCTION AND/OR THE CONDITION OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO ANY CONSTRUCTION DEFECTS, ERRORS, OMISSIONS OR OTHER CONDITIONS, INCLUDING BUT NOT LIMITED TO ENVIRONMENTAL MATTERS, AFFECTING THE PROPERTY, OR ANY PORTION THEREOF. THIS RELEASE INCLUDES CLAIMS OF WHICH PROSPECTIVE BIDDER IS PRESENTLY UNAWARE OR DOES NOT PRESENTLY SUSPECT TO EXIST IN HIS/HER/ITS FAVOR WHICH, IF KNOWN BY PROSPECTIVE BIDDER, WOULD MATERIALLY AFFECT PROSPECTIVE BIDDER'S RELEASE OF SELLERS AND CONCIERGE. EACH PROSPECTIVE BIDDER SHOULD CONSIDER THESE MATTERS WHEN REGISTERING AS A BIDDER AND BEFORE PARTICIPATING IN ANY AUCTION AND PLACING BIDS.

YOU ACKNOWLEDGE AND AGREE THAT THIS RELEASE AND DISCLAIMER IS INTENDED TO BE VERY BROAD AND YOU HEREBY WAIVE AND RELINQUISH ANY RIGHTS OR BENEFITS YOU MAY HAVE UNDER ANY STATE OR FEDERAL LAW OR LEGAL PRINCIPLE DESIGNED TO INVALIDATE RELEASES OF UNKNOWN OR UNSUSPECTED CLAIMS TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW.

16. **BIDDER'S REPRESENTATIONS**. By registering as a Bidder and bidding at the Auction or by using the Website or the Services, you represent, warrant, and agree with respect to each Property you bid on that:

    **16.1.** You have reviewed all due diligence materials related to the Property, you have inspected the Property, you are familiar and satisfied with the condition of the Property and you have conducted such investigation of the Property as you deemed appropriate;

    **16.2.** Neither Concierge nor Seller, nor any affiliate, agent, officer, employee or representative of either of them, has made any verbal or written representation, warranty, promise or guarantee whatsoever to you, expressed or implied, and in particular, that no such representations, warranties, guarantees, or promises have been made with respect to the condition, operation, or any other matter or thing affecting or related to the Property or the offering or sale of the Property;

    **16.3.** You have not relied upon any representation, warranty, guarantee or promise or upon any statement made or any information provided concerning the Property, including but not limited to information made available on-line at the Website, in Auction advertising, in the Auction brochure, or provided or made available by Concierge or by Seller, or their respective affiliates, agents, officers, employees or representatives;

    **16.4.** You have made your bid after having relied solely on your own independent investigation, inspection, due diligence, analysis, appraisal and evaluation of the Property and the facts and circumstances related thereto;

    **16.5.** You have full power and authority to agree to these Terms and Conditions and to perform the obligations contemplated herein and in the Purchase and Sale Contract, which are valid and binding agreements, enforceable against you in accordance with their respective terms;

    **16.6.** If you are the representative of an entity, such entity is duly organized, validly existing and in good standing in the jurisdiction where such qualification is required and has full corporate power and authority to execute, deliver and perform your obligations under these Terms and Conditions and the Purchase and Sale Contract;

    **16.7.** You have the capacity to close the transaction pursuant to the Purchase and Sale Contract;

    **16.8.** You acknowledge and agree any information provided or to be provided by or on behalf of the Seller with respect to the Properties including, without limitation, all information contained on the Website, in Auction advertising, or any other printed or online materials being made available to you by Seller and Concierge, was obtained from Seller and/or Seller's agents, and Concierge has not made any independent investigation or verification of such information, and makes no representations as to the accuracy or completeness of such information;

    **16.9.** Without limiting the generality of the foregoing, you acknowledge and agree that Concierge shall not have any obligation to disclose to any Bidder, and shall have no liability for its failure to disclose to any Bidder, any information known to Concierge relating to any

6

Property except as may be required by law;

**16.10.** You acknowledge and agree that Concierge is not liable or bound in any manner by any oral or written statements, representations or information pertaining to the Property, or the operation thereof, made or furnished by any real estate broker, agent, employee, or other person;

**16.11.** You are not subject to trade sanctions, embargos or any other restriction on trade in the jurisdiction in which you do business as well as under the laws of the European Union, the laws of England and Wales, or the laws and regulations of the United States, and you are not owned (nor partly owned) or controlled by such sanctioned person(s) (collectively, "***Sanctioned Person(s)***");

**16.12.** The funds used to purchase the Property are not connected with nor have any link to nor are derived from any criminal activity, including without limitation tax evasion, money laundering, terrorist activities or other criminal activity, and you are neither under investigation, nor have been charged with or convicted of without limitation, tax evasion, money laundering, terrorist activities or other criminal activity.

**17. SALES ASSOCIATE/BROKER COMPENSATION**. In some cases, a commission/referral fee will be paid by Seller and/or Concierge to a properly registered and licensed real estate Sales Associate or Broker in the jurisdiction in which the Property is located whose client is the successful Buyer at the Auction and whose client completes the purchase of the Property. For more details regarding applicable commissions and referral fees, please visit the applicable Property's web page. Title to the Property must be transferred, and the client must pay the Purchase Price for the Property for such commission or referral fee to be paid.

**17.1.** In order to be entitled to any commission or referral fee, Bidder's Real Estate Broker must:

**17.1.1.** Register his or her client whereby the client agrees to these Terms and Conditions;

**17.1.2.** The client must submit a starting bid form via email to Concierge at register@conciergeauctions.com, or directly to a Concierge representative, identifying the client's Sales Associate or Broker, prior to 5:00 p.m. Local Time on the business day before the scheduled Auction close date. Concierge may, in its discretion, extend this deadline;

**17.1.3.** Agree to be bound by these Terms and Conditions;

**17.1.4.** The Real Estate Broker's client must close the purchase of the Property in accordance with the Purchase and Sale Contract;

**17.1.5.** Comply with all applicable laws and regulations relating to broker duties and commissions;

Please note the amount or rate of any real estate commission is not fixed by law. They are set by each broker individually and may be negotiable between the client and broker.

**18. FURNISHINGS**. To determine whether a Property is being sold furnished or unfurnished, please refer to the Property web page. Please consult the Purchase and Sale Contract for a list of items included or excluded in the purchase of the Property and other terms and conditions related to the purchase of the Property.

**19. TITLE**. Seller will convey good and marketable title to the Property free and clear of all liens and encumbrances, except as set forth in the Purchase and Sale Contract and subject to the preliminary title report, (the "***Preliminary Title Report***") related to the Property. You are advised to review the Purchase and Sale Contract and the Preliminary Title Report and title commitment, if applicable, for the Property prior to participating in any Auction.

**20. NO CONTINGENCIES; CASH TRANSACTION**. Buyer's purchase of the Property shall be in all instances, a cash transaction and is not subject to or dependent upon any contingencies or conditions of any kind, including, without limitation, a contingency for financing, due diligence or inspections.

**21. DISPUTE AND WITHDRAWAL.** Concierge may, in the event of any dispute between Bidders, determine the successful Bidder, reopen the auction, or re-offer the subject Property for auction. Should there be any dispute after the Auction, Concierge's record of the High Bid, and the Purchase Price shall be conclusive to resolve the dispute. Concierge and Seller reserve the right to withdraw the Property before or at the Auction in its sole discretion and shall have no liability whatsoever for such withdrawal.

**22. CANCELLATION OR POSTPONEMENT OF AUCTION**. Concierge reserves the right to cancel, postpone or withdraw the Property(s) up to the start of the Auction. Seller reserves the right to sell the Property(s) prior to the start of the Auction. Should Concierge choose to postpone the Auction, any Starting Bid shall remain active and irrevocable for a period not to exceed 60 days from the scheduled auction date. If the Auction is postponed, and rescheduled beyond 60 days, Bidder may be permitted to make a new Starting Bid pursuant to the Terms and Conditions for the rescheduled auction. Please refer to the Terms and Conditions below for further clarification and instruction.

**23. GOVERNING LAW**. The rights and obligations of the parties with respect to these Terms and Conditions and the conduct of the Auction shall be governed, enforced and interpreted under the laws of the state of New York, without regard for conflicts of law principles.

**24. PRESS RELEASES AND PROMOTION.** Each attendee of the Auction shall be deemed to have consented to the issuance of press releases and other public communications by Seller, Concierge and/or their agents regarding the Auction and the Property offered or sold at the Auction. By executing these Terms and Conditions each attendee of the Auction authorizes and consents to the recording of such attendee's participation and appearance on video tape, audio tape, film, photograph or any other medium and the exhibition or distribution of such recording without restrictions or limitation for any promotional purpose which Concierge and those acting pursuant to its authority, deem appropriate. Bidder hereby releases and discharges Concierge, its members, officers, employees, representatives and agents, from any and all claims and demands arising out of or in connection with the use of such photographs, film or tape, including but not limited to any claims for defamation or invasion of privacy or rights to publicity.

7

25. **NO WARRANTIES**. CONCIERGE HEREBY DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES. CONCIERGE IS MAKING THE WEBSITE AVAILABLE "AS IS" WITHOUT WARRANTY OF ANY KIND. YOU ASSUME THE RISK OF ANY AND ALL DAMAGE OR LOSS FROM USE OF, OR INABILITY TO USE, THE WEBSITE OR THE SERVICES. TO THE MAXIMUM EXTENT PERMITTED BY LAW, CONCIERGE EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE WEBSITE, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NONINFRINGEMENT. YOU ACKNOWLEDGE AUCTIONS WILL BE CONDUCTED ONLINE THROUGH CONCIERGE'S DIGITAL BIDDING APPLICATION AND THAT CONCIERGE MAY UTILIZE THIRD PARTY TECHNOLOGY IN ORDER TO CONDUCT THE AUCTION AND/OR TO ACCEPT BIDS, ALL IN CONCIERGE'S DISCRETION. CONCIERGE DOES NOT WARRANT THAT THE FUNCTIONS, FEATURES OR CONTENT CONTAINED IN ITS WEBSITE, THE SERVICES OR ANY AUCTION PLATFORM, APPLICATION OR BIDDING SOFTWARE, INCLUDING, WITHOUT LIMITATION, ANY THIRD-PARTY SOFTWARE, TECHNOLOGY, PRODUCTS OR  OTHER MATERIALS WILL MEET YOUR REQUIREMENTS OR THAT THE OPERATION OF THE WEBSITE OR THE  SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE OR THAT DEFECTS WILL BE CORRECTED IN A TIMELY  MANNER.

26. **INDEMNIFICATION**. Bidder shall indemnify, defend (by counsel satisfactory to Concierge) and hold harmless Concierge and its officers, employees, agents and representatives (collectively, the "***Indemnitees***"), against any claim, demand, cause of action, loss, liability, deficiency, fine, penalty, damage or  expense (including reasonable attorney's fees, costs, disbursements, interest and penalties) (a "***Loss***") which any Indemnitee may suffer, incur, sustain or become subject to, as a result of or in connection with: (i) any breach by Bidder of its obligations under these Terms and Conditions, and any representation, warranty, obligation or covenant set forth in these Terms and Conditions; (ii) any breach  by Bidder of any Purchase and Sale Contract; and (iii) any damage to person or property caused by Bidder in connection with the Property or  the Auction.

27. **LIMITATION OF LIABILITY**. You agree that Concierge shall not be liable for any damages of any type or nature (whether in contract, tort or otherwise) sustained or claimed by any Bidder or any other person or entity in connection with the Website, the Services, the Auction and/or  the sale of any Property and/or the failure of any party to complete the sale of any Property including but not limited to legal fees, costs and  disbursements. Without limiting the foregoing, in no event shall Concierge's liability to any Bidder for any act or omission occurring in connection with the Website, the Services or the Auction exceed the amount that you have actually paid to Concierge as compensation in connection with your purchase of any particular Property at Auction. In no event will Concierge be liable for any direct, indirect, incidental, special, punitive, exemplary or consequential damages, losses related to  business interruption, loss of business information or lost profits arising out of or in connection  with the Website, the sale of any Property, the Services or the Auction, or out of any breach of warranty, even if Concierge has been advised of the possibility of such damages. This limitation shall apply regardless of whether the damages arise out of breach of contract, tort, or any other legal theory or form of action.

28. **LIMITATION ON TIME TO FILE CLAIMS**. Any cause of action or claim you may have arising out of or relating to these Terms and Conditions, the Website, the Services or an Auction must be commenced within one (1) year after the cause of action accrues, otherwise, your cause of action or claim is permanently barred.

29. **NOT AN OFFER TO SELL, SOLICITATION ONLY**. Any information on any website, in any brochure, e-mail or postcard and any and all information available regarding the Properties shall not constitute an offer to sell or a solicitation of any offer to buy any Property. In addition, and without limiting the foregoing, any website, advertisement or brochure shall not constitute an offer to sell or a solicitation of any offer to buy nor shall there be any Auction of any Property in any state in which such offer, solicitation, or Auction would be unlawful. Offers made at the Auction are void where prohibited by law.

30. **LICENSING**. Concierge's current licensing and bonding information can be found at conciergeauctions.com. For information about Concierge's licensing and bonding, please contact Concierge or visit www.ConciergeAuctions.com/licenses.

31. **THIRD PARTIES**. Concierge and Seller may provide or designate certain third parties to provide ancillary services in connection with a Property Auction or links to the websites or products or services of others ("***Third-Party Services***"). Concierge and Seller have no control over, and no liability for any such Third-Party Services. Any such designations do not constitute an endorsement by Concierge or Seller of such third-party service providers, or the Third-Party Services. These third parties operate independently of Concierge and Seller and have established their own terms and conditions and policies. Bidder acknowledges and agrees that Concierge and Seller are not responsible for any damages or losses caused or alleged to have been caused by the use of any Third-Party Services.

32. **SEVERABILITY; WAIVER**. If any provision of these Terms and Conditions is held by a court of competent jurisdiction to be invalid or unenforceable, then such provision shall be enforced to the maximum extent permissible to affect the intent of these Terms and Conditions, and the remainder of these Terms and Conditions shall continue in full force and effect. No waiver of any breach of any provision of these Terms and Conditions shall constitute a waiver of any prior, concurrent, or subsequent breach of the same or any other provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party.

33. **ENTIRE AGREEMENT**. These Terms and Conditions, together with any additional terms and conditions specific to a particular auction (which  are incorporated herein by reference and can be found through one or more links on the detail page for the auction in question), constitute the entire agreement between Concierge and Bidder regarding its subject matter and supersede and replace any and all prior or contemporaneous  agreements between the parties regarding such subject matter.

34. **ARBITRATION; VENUE; PREVAILING PARTY**. The parties agree to submit all controversies, disputes, claims and matters of difference arising out of or relating to these Terms and Conditions, including but not limited to its enforcement, scope and/or interpretation, exclusively to arbitration in New York, New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association from  time to time in effect (the "*Arbitration Rules*"). The Seat of the arbitration shall be exclusively in New York, NY. Notwithstanding anything to the contrary contained in this Agreement, each of the Parties agrees that this Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act applies to and governs this arbitration provision and shall preempt any inconsistent state or federal rule or law. The parties agree to grant all powers to the arbitrator to the fullest extent of the Rules. The parties will attempt, in good faith, to agree on a retired judge as sole arbitrator. In the absence of such agreement, there will be one arbitrator, selected in accordance with the Rules. The parties agree to abide by all decisions reached and awards rendered in such arbitration proceedings, and all such decisions and awards will be final and binding on both parties. Judgment upon the award may be entered in any court of competent jurisdiction or application may be made to such court for a judicial acceptance of the award and an order of enforcement. By bidding at an auction, whether present in person, or by agent, by proxy, by written bid, telephone bid, internet bid, or other  means, the Bidder shall be deemed to consent to the jurisdiction of the state and federal courts located in the County of New York, State of  New York (and of the appropriate appellate courts therefrom) in any such action or proceeding (including an action to compel arbitration) and  waives any objection to venue. Process in any action or proceeding may be served personally or by registered mail anywhere in the world. In the event of any such arbitration or any permitted court action, the prevailing party shall be entitled to reimbursement from the non-prevailing party of all reasonable attorney's fees and costs/expenses of the prevailing party and any award of the arbitrator(s) or court will include costs  and reasonable attorneys' fees to the prevailing party. If any Party files a court action arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to  arbitrate, to compel or stay arbitration, or to confirm, vacate or modify an arbitration award (except for a non-contested application to confirm),  or to seek payment of any attorneys' fees and/or costs awarded by the arbitrator(s) but not paid by the non-prevailing party in the arbitration, or  in the event any Party seeks enforcement of any arbitration award or judgment arising out of an arbitration award, reasonable attorney's fees  and other costs incurred by the prevailing Party in such court action or in connection with such judgment enforcement shall be reimbursed by  the non-prevailing Party. THE PARTIES UNDERSTAND THAT, ABSENT THIS AGREEMENT, THEY WOULD HAVE THE RIGHT TO SUE EACH OTHER IN COURT, AND THE RIGHT TO A JURY TRIAL, BUT THEY GIVE UP THOSE RIGHTS VOLUNTARILY AND AGREE TO RESOLVE ANY AND ALL GRIEVANCES BY ARBITRATION.

35. **INDEPENDENT LEGAL ADVICE; CONSTRUCTION.** This Agreement is an important legal document. The Owner acknowledges that it has been advised by Concierge to consult legal counsel before signing this Agreement and has signed this Agreement after having the opportunity to consult with legal counsel of its choosing. Concierge has not provided legal advice (including but not limited to tax advice), and no one at Concierge has acted as the Owner's legal counsel. The Owner hereby confirms to have carefully read this Agreement in its entirety, understand all of its terms, and knowingly and voluntarily agrees to all of the terms and conditions contained herein. Any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply when interpreting this Agreement.

36. **FORCE MAJEURE**. We will not be liable or responsible to you, nor be deemed to have defaulted or breached these Terms and Conditions, for any  failure or delay in our performance under these Terms and Conditions when and to the extent such failure or delay is caused by or results from   acts or circumstances beyond our reasonable control, including, without limitation, acts of God, flood, fire, earthquake, explosion, governmental  actions, war, invasion or hostilities (whether war is declared or not), terrorist threats or acts, riot or other civil unrest, national emergency,  revolution, insurrection, epidemic, pandemic, lockouts, strikes or other labor disputes (whether or not relating to our workforce), or restraints  or delays affecting carriers or inability or delay in obtaining supplies of adequate or suitable materials, materials or telecommunication breakdown or power outage.

37. **TIME OF THE ESSENCE**. You acknowledge and agree that TIME IS OF THE ESSENCE with respect to your performance of all obligations and actions required or permitted to be taken under this Agreement. In the event you fail to complete such actions within the time prescribed under this Agreement, you shall be deemed in default, and in addition to other remedies available at law, equity, or under this Agreement.

38. **FURTHER ASSURANCES**. The Owner shall take such other actions and execute such documents consistent with this Agreement as may be reasonably requested by Concierge to: market the Property for sale, conduct the Auction, transfer ownership of the Property to the Buyer and complete the sale of the Property, including, without limitation, granting Concierge permission to engage with the Owner's representatives, at the Owner's sole expense, to prepare the Purchase and Sale Contract with no conditions or contingencies, consistent with applicable law.

39. **INTELLECTUAL PROPERTY RIGHTS**. The Website and its entire contents, features and functionality (including all information, software, text, displays, images, video and audio, and the design, selection and arrangement thereof), are owned by Concierge, its licensors or other providers of such  material and are protected by United States and international copyright, trademark, patent, trade secret and other intellectual property or  proprietary rights laws.

These Terms and Conditions permit you to use the Website for your personal, noncommercial use only. You must not reproduce, distribute, modify, create derivative works of, publicly display, publicly perform, republish, download, store or transmit any of the material on our Website, except as follows:

**39.1.** Your computer may temporarily store copies of such materials in RAM incidental to your accessing and viewing those materials. You

9

may store files that are automatically cached by your Web browser for display enhancement purposes. You may print or download one copy of a reasonable number of pages of the Website for your own personal, noncommercial use and not for further reproduction, publication or distribution.

**39.2.** If we provide desktop, mobile or other applications for download, you may download a single copy to your computer or mobile device solely for your own personal, noncommercial use, provided you agree to be bound by our end user license agreement for such applications.

**39.3.** If we provide social media features with certain content, you may take such actions as are enabled by such features. You must not:

> **39.3.1.** Modify copies of any materials from this site.
> **39.3.2.** Use any illustrations, photographs, video or audio sequences or any graphics separately from the accompanying text.
> **39.3.3.** Delete or alter any copyright, trademark or other proprietary rights notices from copies of materials from this site.
> **39.3.4.** Access or use for any commercial purposes any part of the Website or any services or materials available through the Website.

If you print, copy, modify, download or otherwise use or provide any other person with access to any part of the Website in breach of the Terms and Conditions, your right to use the Website will cease immediately and you must, at our option, return or destroy any copies of the materials you have made. No right, title or interest in or to the Website or any content on the Website is transferred to you, and all rights not expressly granted are reserved by the Company. Any use of the Website not expressly permitted by these Terms and Conditions is a breach of these Terms and Conditions and may violate copyright, trademark and other laws.

**39.4. TRADEMARKS**. Concierge's name and its logos and all related names, logos, product and service names, designs and slogans are trademarks of Concierge or its affiliates or licensors. You must not use such marks without the prior written permission of Concierge. All other names, logos, product and service names, designs and slogans on this Website are the trademarks of their respective owners. [Copyright Policy]().

**40. WEBSITE PROHIBITED USES**. You may use the Website only for lawful purposes and in accordance with these Terms and Conditions. You agree not to use the Website:

**40.1.** In any way that violates any applicable federal, state, local or international law or regulation (including any laws regarding the export of data or software to and from the US or other countries).

**40.2.** For the purpose of exploiting, harming or attempting to exploit or harm minors in any way by exposing them to inappropriate content, asking for personally identifiable information or otherwise.

**40.3.** To transmit, or procure the sending of, any advertising or promotional material, including any "junk mail," "chain letter" or "spam" or any other similar solicitation.

**40.4.** To impersonate or attempt to impersonate Concierge, its employees, another user or any other person or entity (including by using email addresses or screen names associated with any of the foregoing).

**40.5.** To engage in any other conduct that restricts or inhibits anyone's use or enjoyment of the Website, or which, as determined by us, may harm Concierge or users of the Website or expose them to liability.

Additionally, you agree not to:

**40.6.** Use the Website in any manner that could disable, overburden, damage or impair the site or interfere with any other party's use of the Website, including their ability to engage in real time activities through the Website.

**40.7.** Use any robot, spider or other automatic device, process or means to access the Website for any purpose, including monitoring or copying any of the material on the Website.

**40.8.** Use any manual process to monitor or copy any of the material on the Website or for any other unauthorized purpose without our prior written consent.

**40.9.** Use any device, software or routine that interferes with the proper working of the Website.

**40.10.** Introduce any viruses, trojan horses, worms, logic bombs or other material that is malicious or technologically harmful. • Attempt to gain unauthorized access to, interfere with, damage or disrupt any parts of the Website, the server on which the Website is stored, or any server, computer or database connected to the Website.

**40.11.** Attack the Website via a denial-of-service attack or a distributed denial-of-service attack.

**40.12.** Otherwise attempt to interfere with the proper working of the Website.

Concierge reserves the right to terminate your use of the Services and/or the Website. To ensure that Concierge provides a high quality experience for you and for other users of the Website and the Services, you agree that Concierge or its representatives may access your account and records on a case-by-case basis to investigate complaints or allegations of abuse, infringement of third party rights, or other unauthorized uses of the Website or the Services. Concierge does not intend to disclose the existence or occurrence of such an investigation unless required  by law, but Concierge reserves the right to terminate your account or your access to the Website immediately, with or without notice to you,  and without liability to you, if Concierge believes that you have violated any of the Terms and Conditions, furnished Concierge with false or  misleading information, or interfered with use of the Website or the Services by others.

**41. RELIANCE ON INFORMATION POSTED**. The information presented on or through the Website is made available solely for general information purposes. We do not warrant the accuracy, completeness or usefulness of this information. Any reliance you place on such information is strictly at your own risk. Concierge disclaims all liability and responsibility arising from any reliance placed on or use of such materials by you or any other visitor to the Website, or by anyone who may be informed of any of its contents.

This Website may include content provided by third parties, including materials provided by other users, bloggers and third-party licensors, syndicators, aggregators and/or reporting services. All statements and/or opinions expressed in these materials, and all articles and responses to questions and other content, other than the content provided by Concierge, are solely the opinions and the responsibility of the person or entity providing those materials. These materials do not necessarily reflect the opinion of Concierge. We are not responsible, or liable to you or any third party, for the content or accuracy of any materials provided by any third parties.

42. **INFORMATION ABOUT YOU AND YOUR VISITS TO THE WEBSITE**. All information we collect on this Website is subject to our [Privacy Policy](). By using the Website, you consent to all actions taken by us with respect to your information in compliance with the Privacy Policy.

43. **LINKING TO THE WEBSITE AND SOCIAL MEDIA FEATURES**. You may link to our homepage, provided you do so in a way that is fair and legal and does not damage our reputation or take advantage of it, but you must not establish a link in such a way as to suggest any form of association, approval or endorsement on our part.

This Website may provide certain social media features that enable you to:
**43.1.** Link from your own or certain third-party websites to certain content on this Website.
**43.2.** Send emails or other communications with certain content, or links to certain content, on this Website.
**43.3.** Cause limited portions of content on this Website to be displayed or appear to be displayed on your own or certain third-party websites. You may use these features solely as they are provided by us solely with respect to the content they are displayed with and otherwise in accordance with any additional terms and conditions we provide with respect to such features. Subject to the foregoing, you must not:
**43.4.** Establish a link from any website that is not owned by you.
**43.5.** Cause the Website or portions of it to be displayed, or appear to be displayed by, for example, framing, deep linking or in- line linking, on any other site.
**43.6.** Link to any part of the Website other than the homepage.
**43.7.** Otherwise take any action with respect to the materials on this Website that is inconsistent with any other provision of these Terms and Conditions.

The website from which you are linking, or on which you make certain content accessible, must comply in all respects with these Terms and Conditions. You agree to cooperate with us in causing any unauthorized framing or linking immediately to cease. We reserve the right to withdraw linking permission without notice. We may disable all or any social media features and any links at any time without notice in our discretion.

44. **LINKS FROM THE WEBSITE.** If the Website contains links to other sites and resources provided by third-parties, these links are provided for your convenience only. This includes links contained in advertisements, including banner advertisements and sponsored links. We have no control over the contents of those sites or resources and accept no responsibility for them or for any loss or damage that may arise from your use of them. If you decide to access any of the third-party websites linked to this Website, you do so entirely at your own risk and subject to the terms and conditions of use for such websites.

45. **YOUR COMMENTS AND CONCERNS**. All feedback, comments, requests for technical support and other communications relating to the Website should be directed to [clientservices@conciergeauctions.com.]()

**<u>Exhibit C</u>**

**List of Properties**

The Properties sold at Auction shall be comprised of no less than the following parcels located on Hampton Island owned by the following Debtor entities:

Fulcrum Loan Holdings, LLC: all parcels conveyed by deed on October 2013;

Fulcrum Tale, LLC: all parcels

Strategic Retreat Holdings, LLC: all parcels;

HIP II, LLC f/k/a Hampton Island Preserve II, LLC: all parcels; and

JARBAI, LLC: all parcels owned on April 30, 2017.

**Exhibit D**

Declaration of the Auctioneer

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In Re: | CASE NO.  24−56114−PWB |
| **FULCRUM LOAN HOLDINGS, LLC, *et al.*,**[1] | CHAPTER 11 |
| Debtors. | Jointly Administered |

## DECLARATION OF CHAD ROFFERS IN SUPPORT OF APPLICATION FOR AN ORDER AUTHORIZING DEBTOR TO EMPLOY CONCIERGE AUCTIONS, LLC PURSUANT TO SECTIONS 327(A) AND 328(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(A)

I, Chad Roffers, hereby declare the following under penalties of perjury pursuant to 28 U.S.C. § 1746:

1.      I am the CEO and a member of Concierge Auctions, LLC ( "**Concierge**"), a Delaware limited liability company with offices at 228 Park Avenue S, Suite 70835, New York, NY 10003.

2.      This Declaration is submitted in support of the Application (the "Application") for an order authorizing Debtor to employ Concierge as auctioneer for the properties owned by Debtors as more particularly described in the Application (collectively, the "**Propertie**s").

---

[1] The Debtors in these jointly-administered Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Fulcrum Loan Holdings, LLC (7401), Fulcrum Tale LLC (2038), Strategic Retreat Holdings, LLC (2894), HIP II, LLC (0611), and JARBAI, LLC (1447)

3.      The conditions of the proposed retention by the Debtors for the sale of the Properties are set forth in that certain Auction Agreement, annexed hereto (the "**Agreement**"), which terms and conditions are summarized herein.

4.      Under the terms of the Agreement, Concierge will market the Properties for auction as single package.

5.      Concierge is experienced and qualified to represent the Debtors in connection with the auction of the Properties.  Concierge has a well-deserved reputation for successfully closing on sales of luxury residential properties – including several ultra-luxury properties.

6.      To the best of my knowledge insofar as I have been able to ascertain after reasonable inquiry and relying upon the procedures employed by Concierge to identify potential relationships, Concierge (a) does not hold any interest materially adverse to the Debtors' estates; (b) has no connection with the Debtors or their creditors outside of this engagement; and (c) is a "disinterested person" as I understand that term to mean under the Bankruptcy Code.

7.      Neither I nor the professionals of Concierge, to the best of my knowledge after reasonable inquiry, have any relationship with the United States Bankruptcy Judge assigned to these Chapter 11 Cases, the U.S. Trustee, or any persons employed by the U.S. Trustee.

*[Signature Page Follows]*

Dated: New York, New York

    September 3 , 2025

                                    _Chad Roffers_
                                    Chad Roffers (Sep 3, 2025 15:06:56 MDT)
                                    _____
                                    Chad Roffers

*[Signature Page to Declaration of Auctioneer]*