UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:

FULCRUM LOAN HOLDINGS, LLC, *et al.*

Debtor.

CASE NO. 24-56114-PWB

CHAPTER 11
JOINTLY ADMINISTERED

**LYLE AND CARY'S BRIEF ON LIS PENDENS
AND PUNITIVE DAMAGES**

COME NOW, Wayne Lyle and Charles Cary ("Lyle and Cary") and file this Supplemental Brief, respectfully showing as follows:

**INTRODUCTION**

As it now stands, this case is focused on two key disputed issues: (1) can the Court properly sell what has been referred to as the Lis Pendens Property free and clear of Lyle and Cary's *lis pendens* (the "Lis Pendens") by any means, including ordering its removal or issuing an order that effectively detaches it from the underlying property?; and (2) will Lyle and Cary's claims for interest, attorneys fees, and punitive damages attach as of the time of the fraudulent conveyance in 2013/2014 and have priority over the claims of Bay Point and Fox. The answers are as follows: (1) the Court cannot remove the *lis pendens* directly, by detachment, or otherwise; and (2) if successful, all of Lyle and Cary's claims (including interest, attorney's fees, and punitive damages) attach as of 2013/2014 and will priority. This Brief sets forth the controlling authority and why it exists.

**A.    The Court Cannot Remove The Lis Pendens Directly Or Indirectly; And The Very Good Reason Why.**

As it seems to have been briefed to the Court's satisfaction (and therefore, absent further inquiry, will not be re-briefed), a Bankruptcy Court does not have the authority to simply remove

1

a *lis pendens*. *In re Jackson Masonry, LLC*, No. 3:16-BK-02065, 2018 WL 1636085, at *4 (Bankr. M.D. Tenn. Apr. 3, 2018); *In re Adamson*, 312 B.R. 16, 21 (Bankr. D. Mass. 2004); *In re Mundy Ranch, Inc.,* 484 B.R. 416, 424–25 (Bankr. D.N.M. 2012).[1]

The next question is, can a Bankruptcy Court negate a *lis pendens* by "divorcing" it from the property to which it is attached, as the New Mexico Bankruptcy Court did in *In re Mundy Ranch*? While the appellate courts do not appear to have had occasion to address this issue specifically in the context of a *lis pendens*, the underlying and controlling question – can a Bankruptcy Court do indirectly what the Bankruptcy Code does not allow it to do directly? – has been the subject of significant litigation over the years in a variety of permutations. The controlling answer, including that given by the United States Supreme Court last year in *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 218, 144 S. Ct. 2071, 2083, 219 L. Ed. 2d 721 (2024), is always and resoundingly, no.

Bankruptcy Courts are courts of limited jurisdiction, whose powers, authority, and jurisdiction are governed and defined by Title 11 of the U.S. Code. *In re Ray*, 624 F.3d 1124, 1130 (9th Cir. 2010) ("In determining the scope of a bankruptcy court's jurisdiction, our analysis begins with the statutory scheme because the "jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute.") (*quoting, Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (speaking to jurisdiction generally).

---

[1] *In re Mundy Ranch* carries, little if any, authoritative weight. First, the case was not appealed, likely because it involved 32 acres of vacant land used to grow Christmas trees and the plaintiff merely held a 25 percent in the company that owned the land. Second, the claims sought dissolution and partition on the basis of alleged waste of corporate assets – claims that do not really question title. *Resol. Tr. Corp. v. Binford*, 1992-NMSC-068, ¶ 19, 114 N.M. 560, 567, 844 P.2d 810, 817 (1992) ("The filing of a notice of *lis pendens* is authorized only in actions "affecting the title to real estate in this state.").

2

The instances in which a Bankruptcy Court can sell property free and clear were carefully laid out by Congress in 11 U.S.C. § 363(f):

> **(f)** The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, **only if—**
> **(1)** applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> **(2)** such entity consents;
> **(3)** such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> **(4)** such interest is in bona fide dispute; or
> **(5)** such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C.A. § 363 (emphasis added). As noted above, none of these apply to *lis pendens*. *In re Jackson Masonry, LLC*; *In re Adamson*; *In re Mundy Ranch*.

This was not an oversight. *Lis pendens* have been a core tenet of property law for hundreds of years. Basic rules of statutory construction require the Courts to presume that Congress knew this law when it adopted § 363(f). *United States v. Baxter Int'l, Inc.,* 345 F.3d 866, 900 (11th Cir.2003) ("We presume that Congress legislates against the backdrop of established principles of state and federal common law, and that when it wishes to deviate from deeply rooted principles, it will say so."). Indeed, they give a presumption against any interpretation that would allow removal of *lis pendens* rights. *United States v. Texas,* 507 U.S. 529, 534, 113 S.Ct. 1631, 1634–35, 123 L.Ed.2d 245 (1993) ( "Statutes which invade the common law ... are to be read with **a presumption favoring the retention of long-established and familiar principles**, except when a statutory purpose to the contrary is evident. In such cases, Congress does not write upon a clean slate. **In order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law**.") (emphasis added). In other words, there can be no real question that Congress was intentional in its decision not to include *lis pendens* in the things that Bankruptcy Courts could avoid.

3

Moreover, Congress saw fit to specifically enumerate when Bankruptcy Courts can sell property free and clear. 11 U.S.C. § 363(f). It did not see fit to (i) change the long-standing common law rule that a *lis pendens* puts the world on notice of claims affecting title, or (ii) include *lis pendens* in the list of items that could be stripped from property to achieve a free and clear sale. As such, Bankruptcy Courts are prohibited from devising a "work around" that would give them authority to do indirectly, what they were not authorized to do directly. *Law v. Siegel*, 571 U.S. 415, 424, 134 S. Ct. 1188, 1196, 188 L. Ed. 2d 146 (2014) ("The Code's meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that [Bankruptcy] courts **are not authorized to create additional exceptions**.") (emphasis added); *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S. Ct. 963, 969, 99 L. Ed. 2d 169 (1988) ("The short answer to these arguments is that whatever equitable powers remain in the bankruptcy courts must and **can only** be exercised within the confines of the Bankruptcy Code.") (emphasis added)

*Purdue Pharma* addressed this controlling rule in circumstances that involve dollar figures that dwarf those at issue here, just last year. 603 U.S. 204. Generally stated, the question in *Purdue Pharma* was, can a bankruptcy court give a release to non-debtors (when the release would put billions of dollars into the hands of the creditors of the debtors) absent the consent of creditors? To answer this question, the Supreme Court looked to the enabling language of 11 USC § 1123. It reviewed what the language expressly allowed, reviewed what the proponents of the release said the language (which uses expansive as opposed to the "only if" language in question) could be expansively interpreted to mean, and rejected the plan, finding the Bankruptcy Court did not have authority to do what Congress had not expressly authorized, absent creditor consent. Indeed, this

4

was in the face of an enabling catchall that expanded the power of the Bankruptcy Court -- the opposite of the language here:

> The catchall's text underscores the point. Congress could have said in paragraph (6) that "everything not expressly prohibited is permitted." But it didn't. Instead, Congress set out a detailed list of powers, followed by a catchall that it qualified with the term "appropriate." That quintessentially "context dependent" term often draws its meaning from surrounding provisions. *Sossamon v. Texas*, 563 U.S. 277, 286, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011). And we know to look to the statute's preceding specific paragraphs as the relevant "context" here because paragraph (6) tells us so. It permits "any *other* appropriate provision"—that is, "other" than the provisions already discussed in paragraphs (1) through (5). (Emphasis added.) Each of those "other" paragraphs authorizes a bankruptcy court to adjust claims without consent only to the extent such claims concern the debtor. From this, it follows naturally that an "appropriate provision" adopted pursuant to the catchall that purports to extinguish claims without consent should be similarly constrained.

603 U.S. at 218–19.

There is a very good reason why Congress chose not to allow the Bankruptcy Courts to sell property free and clear of a *lis pendens* -- centuries of established basic rights. With liens and all the other instances where a Bankruptcy Court seeks to sell the property under § 363(f), there is no question that the Debtor holds record title to the property that is to be sold. That is the fundamental fact that allows it to be sold to pay the debtor's bills. A *lis pendens*, however, (especially the *lis pendens* here) is notice to the world that the debtor who claims to own the property and wants to sell it to pay down its debts, may not actually own the property at all. In short, Congress did not include *lis pendens* in what could be sold free and clear because it did not want to allow a Bankruptcy Court to take property that did not belong to the debtor and use it to pay off the debtor's debts. To do so would violate all principles of ownership and equity. It would be akin to allowing a debtor to sell property he stole from someone else to pay off his creditors.

Absent creditor consent, the law does not permit a Bankruptcy Court to sell property free and clear of a *lis pendens* or to devise a "work around" that achieves indirectly that which it cannot achieve directly.

**B.      Lyle And Cary's Claims Predate And Take Priority Over Bay Point And Fox, Including Their Claims For Interest, Attorney's Fees And Punitive Damages.**

In the absence of a specific federal statute or right that expressly requires something different, property interests and the ultimate priority of those interests (whether already established or sought to be established through litigation) are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979).  This applies to all substantive aspects of the property, including the date on which the right attaches. *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20, 120 S. Ct. 1951, 1955, 147 L. Ed. 2d 13 (2000) ("The "basic federal rule" in bankruptcy is that state law governs the substance of claims, *Butner, supra,* at 57, 99 S.Ct. 914, Congress having "generally left the determination of property rights in the assets of a bankrupt's estate to state law," 440 U.S., at 54, 99 S.Ct. 914 (footnote omitted)).

Here, the law that directly controls the questions of (i) whether Lyle and Cary's claims include claims for interest, attorney's fees and punitive damages, (ii) whether the transfer to Bay Point is void as to whatever is required to satisfy those claims, and (iii) whether the avoidance dates back to the date of the initial transfer in 2013/2014 is found in O.C.G.A. § 18-2-77 and *Interfinancial Midtown, Inc. v. Choate Constr. Co.,* 343 Ga. App. 793, 805, 806 S.E.2d 255, 264 (2017).  Ironically, *Interfinancial* was litigated by Leventhal in 2017, and (speculation here) may

6

well have been cited in the legal opinion Bay Point obtained before loaning the money in question because it is the seminal case.[2]

O.C.G.A. § 18-2-77 authorizes Lyle and Cary (as the victims of the fraudulent transfer) to avoid the transfer to the extent necessary to satisfy their claims:

> (a) In an action for relief against a transfer or obligation under this article, a creditor, subject to the limitations in Code Section 18-2-78, may obtain:
>
> > (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;…

O.C.G.A. § 18-2-77.  Indeed, it gives them the right to pursue any equitable relief dictated by the circumstances, including restoring the security deed originally held by Liberty Capital and allowing Lyle and Cary to foreclose and sell all the Lis Pendens Property to satisfy their claims. O.C.G.A. § 18-2-77(a)(C)(3).  *Interfinancial*, with significant and compelling analysis backed up by states across the Country, controls the question as to whether Lyle and Cary's claims include interest, attorney's fees and punitive damages:

> Based upon all of the foregoing, including the appropriate rules of statutory construction, we hold that Georgia law allowing the recovery of general and punitive damages for fraudulent conveyances survived the enactment of Georgia's UFTA.

*Id.* at p. 805.  (Indeed, relevant here, *Interfinancial* included special master fees).

*Interfinancial* also controls the question of whether the avoidance dates back to the time of the fraudulent transfer:

> Defendants misapprehend the date for determining what debt is owed to the creditor for purposes of adjudicating an alleged fraudulent conveyance. It is not the date of trial, but the date of the conveyance. [The debtor]'s belated paying off of the past due debt some eight months later on the eve of trial was no reason for the court to discontinue the fraudulent conveyance trial.

---

[2] Lyle and Cary intend to provide the Deposition of Leventhal as the proffer allowed by the Court on September 10, 2025.  Despite good faith efforts, the Court reporter has not yet completed the transcript.

*Id.* (*quoting, Cavin v. Brown,* 246 Ga. App. 40, 42, 538 S.E.2d 802, 805 (2000)).

There is a very good societal reason for these rules that was addressed by the Court of Appeals in *Interfinancial*. For Georgia to enjoy the benefits of the free flow of credit, it must protect creditors from fraud. Recognizing this, the Georgia Legislature passed the following law:

> The rights of creditors shall be favored by the courts; and every remedy and facility shall be afforded them to detect, defeat, and annul any effort to defraud them of their just rights.

O.C.G.A. § 18-2-20. That state substantive law controls here, and in the Fulton County Superior Court. *Raleigh.*

Punitive damages are a necessary component of this protection. As the Georgia Court of Appeals recognized in *Interfinancial*, if the law did not call for payment of punitive damages, it would ***encourage*** debtors to engage in fraudulent conveyances:

> To say the only remedy of the creditor is in equity to set aside the conveyance would **be to urge the debtor to convey his property away to hinder and defraud creditors**, for if he should get caught at it, no matter how fraudulent his intent or how odious the injury, the worst that could happen would be the setting aside of the conveyance and, even if the asset is destroyed or moved out of reach, equity would aid the creditor in damages only to the extent of the debt. We think this defect in equity jurisdiction *requires* a remedy at law for damages for the fraud itself (see Moore, Fraudulent Conveyance, supra); **it is indispensable to effect the legislative aversion to such a conveyance, which is so strong it declared the acts to be "fraudulent in law."**

*Id.* at 800, *quoting, Kesler v. Veal,* 182 Ga. App. 444, 356 S.E.2d 254 (1987) (emphasis added).

While Bay Point might be tempted to argue that it does not fall within the sphere of this rule and should not be affected by the principles of O.C.G.A. § 18-2-20 because it did not actually perpetuate the fraud in 2014, such arguments miss the mark, and miss the underlying goal the Georgia Legislature dictated the law must achieve and the edict it issued. Bay Point was <u>fully aware</u> of the allegations of fraudulent conveyance and the conclusive evidence of it when it extended its loans. (*Proffer*). Rather than walking away from the Lis Pendens Property that was

8

burdened with this known fraud, it embraced the fraud as a means to obtain profit. (*Proffer*). Going a step further, it spent millions of dollars knowingly funding the Leventhal Entities specifically in their efforts to prevent Lyle and Cary from "detecting, defeating, and annulling" that fraud. Indeed, Leventhal's testimony under oath indicates it strategized with him and his lawyers as to how to do it. (*Proffer*).

Simply put, although Lyle and Cary continue to stand ready, willing, and able to resolve this case on reasonable terms, assuming that another solution is not achieved with Lyle and Cary's consent, the law requires and demands that the Lis Pendens Property be held to satisfy the full extent of Lyle and Cary's claims. It further requires and demands that Lyle and Cary be afforded every possible avenue to recover the full amount of their claims, including punitive damages. Indeed, if necessary to recover the full extent of those damages, the law authorizes an order restoring the Lie Pendens Property as security to Liberty Capital so that Lyle and Cary can obtain full satisfaction.[3]

## CONCLUSION

The clear law requires that the issues at hand be resolved in Lyle and Carys' favor. If the well-funded parties who pushed this case to this point remain intent on litigating to the bitter end, Lyle and Cary respectfully request that the Court rule consistent with the controlling authority set forth herein. Indeed, nothing in law or equity authorizes a party to escape the consequences of the decisions it knowingly made and the damages it knowingly exacerbated.

---

[3] Lyle and Cary have a substantive state law right to seek restoration of the Property to Liberty Capital so they can foreclose and sell the property to satisfy the full amount of their claims. O.C.G.A. § 18-2-77(a)(3)(C).

9

This 12th day of September, 2025.

          BAKER, DONELSON, BEARMAN,
          CALDWELL & BERKOWITZ, P.C.

          */s/ Steven G. Hall*
          Steven G. Hall
          Georgia Bar No. 319308
          Mark Duedall
          Georgia Bar No. 231770
          Kristin S. Tucker
          Georgia Bar No. 805833
          shall@bakerdonelson.com
          ktucker@bakerdonelson.com
          mduedall@bakerdonelson.com

          *Attorneys for Wayne Lyle and Charles Cary*

Monarch Plaza, Suite 1500
3414 Peachtree Road, N.E.
Atlanta, Georgia  30326
Tel:  404.577.6000
Fax:  404.221.6533

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 11, 2025 a true and correct copy of the within and foregoing **LYLE AND CARY'S BRIEF ON LIS PENDENS AND PUNITIVE DAMAGES** was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all parties consenting to service through the Court's CM/ECF system. The undersigned counsel also certifies that a copy of the foregoing will be sent by email and U.S. Mail sent to:

| | |
|---|---|
| *Fulcrum Loan Holdings, LLC :* | *Counsel to Bay Point Capital Partners II, LP:* |
| Ronald S. Leventhal | John C. Allerding |
| 3600 Dallas Highway | Austin Alexander |
| Suite 230 | THOMSON HINE LLP |
| Marietta, GA 30064 | 3560 Lenox Road NE, Suite 1600 |
| (770) 272-7600 | Atlanta, Georgia 30326 |
| rsl@tivoli-properties.com | John.Allerding@ThompsonHine.com |
| | Austin.Alexander@ThompsonHine.com |

10

*Counsel to Bay Point Capital Partners II, LP:*
John F. Isbell
LAW OFFICES OF JOHN F. ISBELL, LLC
3050 Peachtree Road NE, Suite 740
Atlanta, Georgia 30305
T: 404.849.6665
John@JFI-Law.com

*Counsel to Fulcrum Loan Holdings, LLC:*
Benjamin Keck, Esq.
Keck Legal, LLC
2801 Buford Highway NE, Suite 115
Atlanta, Georgia 30329
bkeck@kecklegal.com

*Office of the United States Trustee:*
Alan Hinderleider, Esq.
Office of the United States Trustee
362 Richard B. Russell Federal Building
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303
alan.hinderleider@usdoj.gov

*Fulcrum Loan Holdings, LLC:*
c/o Marshall Glade, Plan Administrator
GlassRatner
3445 Peachtree Road, Suite 1225
Atlanta, Georgia 30326
mglade@glassratner.com

Marshall Glade, Plan Administrator
GlassRatner
3445 Peachtree Road, Suite 1225
Atlanta, Georgia 30326
mglade@glassratner.com

Dated:  September 12th 2025

/s/ Steven G. Hall
Steven G. Hall
Georgia Bar No. 319308
Shall@BakerDonelson.com

*Attorney for Wayne Lyle and Charles Cary*