

**IT IS ORDERED as set forth below:**

**Date: October 31, 2025**

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NUMBER: 24-56114-PWB (JOINTLY ADMINISTERED) |
| FULCRUM LOAN HOLDINGS, LLC, *et al.,* | CHAPTER 11 |
| Debtors. . | JUDGE BONAPFEL |

**Order Denying Motion Of Wayne Lyle and Charles Cary
for Reconsideration or Stay of Confirmation Order**

Fulcrum Loan Holdings, LLC ("Fulcrum") acquired its real estate (the "Fulcrum

Property") at a foreclosure sale at which an affiliate, Liberty Capital, LLC ("Liberty")

foreclosed its deed to secure debt on the property, then owned by Hampton Island, LLC

("Hampton"), another affiliate. Wayne Lyle and Charles Cary ("Plaintiffs") are creditors

of Liberty who filed a lawsuit in the Superior Court of Fulton County alleging that the

foreclosure sale should be set aside as fraudulent ("the Fulton County Litigation") and a

*lis pendens* in the real estate records that gives notice of their claims. [1]  After the filing of the *lis pendens,* Bay Point Capital Partners II, LP ("Bay Point") took a deed to secure debt on the Fulcrum Property to secure debts owed by Fulcrum and some of its affiliates.

Fulcrum filed its chapter 11 case on June 11, 2024.[2]  On May 21, 2025, Bay Point filed a chapter 11 plan for the liquidation of Fulcrum [Doc. 166].[3]  After several days of hearings and amendments to the plan, the Court entered an order (the "Confirmation Order" [Doc. No. 283]) that confirmed the Fourth Amended Chapter 11 Plan of Liquidation With Respect to Debtor Fulcrum Lonan Holdings LLC (the "Fulcrum Plan" [Doc. 292]).[4] The Fulcrum Plan provides for the sale of the Fulcrum Property free and clear of all interests in the property and attachment of those interests to the proceeds of the sale pending final judicial termination of the validity and priorities of the interests and distribution of the proceeds in accordance with that determination.

The Plaintiffs rejected the Fulcrum Plan and objected to its confirmation.  Plan amendments addressed many of the objections to the satisfaction of the Plaintiffs but did not resolve their objections that (1) for several reasons, the Fulcrum Plan impermissibly provides for the sale of the Fulcrum Property free and clear of their interests and their claim that Fulcrum has no interest in it because Fulcrum acquired it through a fraudulent

---

[1] Wayne Lyle and Charles Cary v. Liberty Capital LLC, Hampton Island, LLC, Fulcrum Loan Holdings, LLC, and Ronald Leventhal, Civ. Action No. 2017CV295620, Superior Court of Fulton County, Georgia, filed September 22, 2017.
[2] Four affiliates also filed chapter 11 cases at the same time:  Fulcrum Tale LLC, Strategic Retreat Holdings, LLC, HIP II, LLC, and Jarbai, LLC.  The cases of Fulcrum and its four affiliates are being jointly administered.
[3] Bay Point also filed separate plans of liquidation for the four affiliated debtors: Fulcrum Tale LLC [Doc. No. 160], Strategic Retreat Holdings, LLC [Doc. No. 164], HIP II, LLC [Doc. No. 157], and Jarbai, LLC [Doc. No. 162].
[4] The Confirmation Order also confirmed the Plans that Bay Point filed for the liquidation of the four debtor affiliates.

transfer; (2) the attachment of their interests to the proceeds deprives them of their property rights; and (3) the Fulcrum Plan impermissibly provides for the subordination of their claims for punitive damages against nondebtor parties that, they contend, they can collect from the Fulcrum Property because Fulcrum did not acquire ownership of it in the fraudulent foreclosure sale.

The Court made findings of fact and conclusions of law on the record during and after evidentiary hearings over several days and entered the Confirmation Order that overruled the Plaintiffs' objections.  The Plaintiffs have filed a motion and an amended motion for the Court to reconsider the confirmation of the plan or, alternatively, for a stay pending appeal,[5] with arguments in support of their position.  [Doc. No. 296, 299 (hereinafter "Plaintiffs' Brief")]. [6]

The facts and legal issues with regard to the merits of the Plaintiffs' claims in the Fulton County Litigation and their interests in the Fulcrum Property are disputed, complicated, and complex, as they recognize.  (Plaintiffs' Brief at 2, 7, 23.)  In contrast, the facts with regard to confirmation are undisputed and the applicable legal principles, properly understood in a bankruptcy context, are simple and straightforward.

---

[5] Although styled a motion for reconsideration, the motion under the terminology of the Federal Rules of Bankruptcy Procedure is a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e), *applicable under* Fed. R. Bankr. P. 9023, and a motion to amend its findings of fact (or make additional findings) under Fed. R. Civ. P. 52(b), *applicable under* Fed. R. Bankr. P. 7052, which applies in this contested matter under Fed. R. Bankr. P. 9014(c).

The Plaintiffs have not filed a notice of appeal, but parties may seek a stay of an order or judgment before filing a notice of appeal.  Fed. R. Bankr. P. 8007(a)(2).

[6] Page references cited herein are to the amended motion. [Doc. 299]. The motion and amended motion are nearly identical but for the addition of a subsection (H) to the amended motion "Enumeration Of Elements Satisfying Requirements For A Stay." [Doc. 299 at 30-31].

The simple results of confirmation of the Fulcrum Plan are that (1) the Fulcrum Property will be sold, free and clear of all encumbrances; (2) all of the rights, claims, and interests of the Plaintiffs in the Fulcrum Property that they assert in the Fulton County Litigation will attach to the net proceeds after payment of ad valorem taxes and expenses of sale (to which the Plaintiffs do not object); and (3) after final judicial determination of the rights, claims, and interests of the Plaintiffs and other parties, including Bay Point, in the Fulcrum Property, the proceeds will be disbursed in accordance with those determinations.

The Fulcrum Plan does not alter a single right, claim, or interest of the Plaintiffs in the Fulcrum Property that currently exists under the laws of the State of Georgia and the provisions of the Bankruptcy Code.  Instead, it transfers all the Plaintiffs' rights, claims, and interests to the proceeds of the sale.  Simply put, it replaces the Fulcrum Property with cash in an escrow account.  When the appropriate courts eventually determine the rights, claims, and interests of the Plaintiffs, Bay Point, and others in the Fulcrum Property, as set forth in final judgments, the cash will be distributed in accordance with those rulings.

As the Court explains below, the facts with regard to the Plaintiffs' objections to confirmation are undisputed, and the Court correctly applied the law in overruling those objections.  Accordingly, the Court will deny the Plaintiffs' motion for reconsideration.

Determination of whether to grant a stay pending appeal requires consideration of four factors: (1) the likelihood of success on the merits of the appeal; (2) whether the appellant will suffer irreparable injury in the absence of a stay; (3) whether issuance of a

4

stay will substantially injure other parties with an interest in the proceeding; and (4) where the public interest lies. *E.g., Nken v. Holder,* 556 U.S. 418, 434 (2009); *Garcia-Mir v. Meese,* 781 F.2d 1450, 1453 (11th Cir. 1986); *see In re Gay*, 2005 WL 6487208, at *1 (Bankr. N.D. Ga. June 24, 2005).

As the Court explains below, the Plaintiffs are not likely to prevail on appeal, stay of the Confirmation Order will cause no harm to them, a stay would result in substantial harm to other parties, and the public interest supports confirmation of the plan so that the sale of the Fulcrum Property may proceed, thus enabling the purchaser or purchasers to put it to productive use. The Court will, therefore, deny the Plaintiffs' motion for a stay.

## I. Background[7]

The Fulcrum Property consists of parcels of real property on Hampton Island, Georgia, that are part of the Hampton Island Preserve subdivision, a residential, resort development on the coast of Georgia.  Contemporaneously with confirmation of the Fulcrum Plan, the Court confirmed plans filed by Bay Point for the liquidation of four of Fulcrum's affiliates who also own parcels that are part of Hampton Island Preserve. Other nondebtor affiliates of Fulcrum and unrelated third parties own other parcels, and Bay Point owns, or holds security deeds, on other parcels.

---

[7] The Superior Court in the Fulton County Litigation appointed a Special Master.  The facts set forth in the Background regarding prepetition events are set forth in the *Report and Recommendation on (I) Parties' Cross-Motions for Partial Summary Judgment, (II) Plaintiffs' Objection to Inadmissible Evidence and Request to Strike, and (III) Defendant Leventhal's Expedited Motion to Cancel Lis Pendens* (hereinafter the "Special Master Report").  A copy of the Special Master Report is attached as Exhibit 7 to Lyle and Cary's Notice of Filing [Doc. 314].

It is not necessary to explore the labyrinth of what parties own what parcels in Hampton Island Preserve.  The Fulcrum Property is the same real estate that is at issue in the Fulton County Litigation and that the Plaintiffs' *lis pendens* notice identifies.

Nor is it necessary to explore the labyrinth of the ownership of Fulcrum and its debtor and nondebtor the affiliates.  Ronald Leventhal, through various entities, controls Fulcrum and the affiliates and has a substantial indirect ownership interest in them.

The Plaintiffs' claims arise under an agreement between Plaintiffs and Liberty, an affiliate of Fulcrum, in September 2007, pursuant to which the Plaintiffs acquired interests in another affiliate, Hampton.  At that time, Hampton owned the Fulcrum Property.

The agreement gave the Plaintiffs "put rights" to require Liberty Capital to repurchase their interests in Hampton.  They exercised their put rights in October 2008, but Liberty did not repurchase the interests.  The Plaintiffs sued Liberty and obtained a judgment against it in the amount of $3,286,048.61 in July 2015.

As of September 2013, Hampton owned the Fulcrum Property, subject to deeds to secure debt in favor of Georgian Bank (now First Citizens Bank), Darby Bank (now Ameris Bank), and Bank of North Georgia (now Synovus Bank).  In addition, Liberty held a note from Hampton, secured by a deed to secure debt of the Fulcrum Property subordinate to the three senior encumbrances.

In September 2013, Liberty, under the control of Mr. Leventhal, filed a lawsuit in the Superior Court of Fulton County seeking the appointment of a receiver for Hampton,

6

also under the control of Mr. Leventhal.  Hampton did not oppose appointment of a receiver, and the court appointed a receiver on September 19, 2013.

On October 1, 2013, Liberty exercised the power of sale in its deed to secure debt and sold the property at a foreclosure sale to Fulcrum, also controlled by Mr. Leventhal, for $50,000, subject to the three senior deeds to secure debt that secured debts of apparently $14,847,931.[8]

On September 8, 2014, the receivership court entered a consent judgment jointly submitted by counsel for Liberty and Hampton.  Among other things, the consent judgment found that Hampton had been indebted to Liberty in the amount of $36,671,321.37 and that the market value of the Fulcrum Property did not exceed the debt secured by the senior security deeds.[9]  The consent judgment provided for Hampton to transfer (1) to Fulcrum, certain rights relating to the Fulcrum Property; and (2) to Liberty,  personal property on the Fulcrum Property, a note payable from the Hampton Island Owners' Association to Hampton, and other property interests.  The consent judgment awarded a final judgment in favor of Liberty and against Hampton in the amount of $31,621,321.37.

On September 22, 2017, the Plaintiffs filed a complaint in the Superior Court of Fulton County against Fulcrum, Hampton, Liberty, and Mr. Leventhal.  The complaint alleges that Fulcrum acquired the Fulcrum Property through a fraudulent scheme

---

[8] Special Master Report at 33-34.
[9] The Plaintiffs contend that the Hampton Property had a value substantially in excess of the sum of the debts secured by the senior security deeds.  The Special Master concluded that the market value of the Fulcrum Property at the time of the foreclosure was not material to the issues he considered.  Special Master Report at 40.

designed to strip Liberty of its assets that would otherwise be available to satisfy their claim against Liberty. The complaint asserts that the foreclosure sale effected a fraudulent transfer of the Fulcrum Property to Fulcrum, that the court should impose a constructive trust on the Fulcrum Property for their benefit, that the consent judgment in the receivership proceeding should be set aside as fraudulent and collusive, and that Fulcrum, Hampton, and Mr. Leventhal are liable for Liberty's debts under theories of continuation, successor, partnership, or joint venture liability.

Plaintiff's complaint also asserts claims for actual damages, punitive damages, and attorney's fees against all the defendants based on their fraud. The Plaintiffs contend that they are entitled to collect the judgment against Liberty and their claims for actual damages, punitive damages, and attorney's fees from the Fulcrum Property.

The Plaintiffs' theory for collecting their claims against Liberty from the Fulcrum Property is as follows. First, setting aside the foreclosure sale as fraudulent and the consent judgment restores ownership of the Fulcrum Property to Hampton subject to Liberty's security deed to secure Hampton's debt to it. Second, the Plaintiffs through legal process can attach Liberty's interests in the note and security deed. Third, the Plaintiffs can therefore collect from the Fulcrum Property through foreclosure of Liberty's security deed.

In January 2018, the Plaintiffs filed a notice of *lis pendens* giving notice of the pending litigation.

Bay Point is the holder of several notes owed by Fulcrum and its affiliates that it contends are cross-collateralized and secured by, among other security interests, deeds to

secure debts on their real estate, to secure its claim of $34,079,123.81 as of the petition date, June 11, 2024.  At issue here is Bay Point's deed to secure debt that encumbers the Fulcrum Property.  Because the *lis pendens* filing occurred before Bay Point received its security deeds, the Plaintiffs assert that their interests in the Fulcrum Property have priority over Bay Point.

The three senior deeds to secure debt on the Fulcrum Property no longer encumber it.[10]

Fulcrum removed the Superior Court litigation to this Court.  On July 31, 2025, the Court remanded it to the Superior Court of Fulton County and conditionally modified the automatic stay "to permit the Fulton County Litigation in the Superior Court of Fulton County to proceed and to permit prosecution and defense of any appeals arising in the litigation as if no automatic stay was in effect and as if the bankruptcy cases of [Fulcrum and its affiliates] did not exist."  Order Granting Motion to Remand and Conditionally Granting Motion for Relief From Stay at 2-3, Adv. No. 24-5217, Doc. No. 47, Case No. 24-56114, Doc. No. 217 (July 31, 2015) ("the "Remand and Stay Order").

The Remand and Stay Order provides for the automatic stay to remain in effect with regard to any issue or claim preclusive effect of the following issues, which the Court reserved for determination in this Court because the issues involve the rights and interests of parties, including Bay Point and other creditors of Fulcrum, who are not parties in the Fulton County Litigation (Remand and Stay Order at 3):

---

[10] The Special Master Report does not address who paid these debts and when. After responses of counsel to the Court's inquiry on these questions at the hearing on the Plaintiffs' motion to reconsider or for a stay indicated that the answers are complicated, the Court decided not to pursue the inquiry because the issues are not material to the issues currently before the Court.

(A) The remedies to be imposed against Fulcrum if the Georgia Courts determine that a fraudulent transfer occurred;

(B) Determination of any claims, liens, interests, or any property rights of the Plaintiffs in any property of the estates of Fulcrum and the Debtor Affiliates in these bankruptcy cases, including the priorities of the claims, liens, interests, and property rights of Fulcrum, the Debtor Affiliates, Bay Point Advisors, LLC, any other creditors in the bankruptcy cases, and the Plaintiffs in property of the estates of Fulcrum and the Debtor Affiliates;

(C) The amount of damages against Fulcrum or the Debtor Affiliates on account of any claim of the Plaintiffs, including without limitation (1) the amount of any attorney's fees if Fulcrum is liable for attorney's fees; (2) the amount of any general damages if Fulcrum is liable for any general damages; and (3) the amount of any punitive damages if Fulcrum is liable for punitive damages;

(D) The subordination of any punitive damages against Fulcrum; and

(E) Whether and to what extent any attorney's fees for which Fulcrum is liable are subject to subordination as being punitive in nature.

Importantly, the reservation of these issues for determination in this Court does not alter the Plaintiffs' substantive rights, claims, and interests in the Fulcrum Property.

## II. Consequences of Free and Clear Sale of Fulcrum Property on the Plaintiffs

Plaintiffs' Brief reflects a fundamental misunderstanding of the consequences of the attachment of their interests in the Fulcrum Property to the proceeds of its free and clear sale. Because an understanding of those consequences is essential to the proper

10

analysis of their objections to confirmation, the Court explains how the Bankruptcy Code characterizes the Plaintiffs' interests, the statutory provisions and principles that govern free and clear sales, and the consequences of attachment of interests to the proceeds of the sale.

The Plaintiffs assert a right to payment of their judgment against Liberty and of the other claims they assert in the Fulton County litigation.  In Fulcrum's bankruptcy case, their right to payment is a "claim" as defined in 11 U.S.C. § 101(5)(A).[11]  They assert a right to obtain payment from the Fulcrum Property.  They thus assert a "lien," as defined in 11 U.S.C. § 101(37)[12] on the Fulcrum Property.

The Plaintiffs assert that they seek to collect against *Liberty* and that they are not asserting any interest in the Fulcrum Property.  But the fact is that Liberty has no other assets and, therefore, the Plaintiffs in substance and effect are asserting their rights to recover against the Fulcrum Property and, as such, have an interest in the Fulcrum Property.  And as Part III(A) explains, the Plaintiffs in the Fulton County Litigation expressly request that they be allowed to attach and levy execution on the Fulcrum Property to satisfy the Liberty Judgment and their other claims.

Although the Plaintiffs characterize their rights as not involving the assertion of an interest in the Fulcrum Property, that is the substance and effect of what they are seeking.   To paraphrase Plaintiffs' counsel's argument at the hearing on October 27,

---

[11] "The term 'claim' means (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(A).

[12] "The term 'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation."  11 U.S.C. § 101(37).  "Debt" means "liability on a claim."  11 U.S.C. § 101(12).

2025, a can of green beans remains a can of green beans even if the label says beets.   The

Plaintiffs have a claim secured by a lien on the Fulcrum Property.

The Bankruptcy Code permits the sale of property in which the debtor has an

interest "free and clear of any interest in such property of an entity other than the estate"

in certain circumstances.  11 U.S.C. § 363(f).  The applicable circumstances here are: (1)

the Plaintiffs' interests in the Fulcrum Property are in bona fide dispute; and (2) the

Plaintiffs could be compelled to accept a money satisfaction of their interests.  11 U.S.C.

§ 363(f)(4), (5).

A chapter 11 plan may provide for the "sale of all or any part of the property of

the estate, either subject to or free of any lien."  11 U.S.C. § 1123(a)(5)(D).

In the case of a § 363(f) sale, the court must condition the sale on the provision of

"adequate protection" of the interest of an entity in the property to be sold.  One form of

adequate protection is relief that results in the "indubitable equivalent" of an entity's

interest in property.  11 U.S.C. § 361(3).

In the case of a free and clear sale pursuant to a plan under § 1123(a)(5)(D), a

plan is not confirmable over the objection of the holder of a lien under 11 U.S.C.

§ 1129(b)(2)(A)(ii) unless the lien attaches to the proceeds of the sale and the holder

either receives payments with a value equal to the amount of its claim or the plan

provides for "realization . . . of the indubitable equivalent" of the claim.  11 U.S.C.

§ 1129(b)(2)(A)(iii).

Provisions in a free and clear sale order or in a confirmed plan for liens and

interests in the property being sold to attach to the proceeds of the sale and for

12

distribution of the proceeds in accordance with later judicial determination of the validity, amount, and priority of such liens and interests allow the holders of liens and interests to realize the indubitable equivalent of their liens and interests.  Simply put, they receive from the proceeds what they would realize from their liens and interests from enforcement of them against the property.

This is exactly what the Fulcrum Plan does.  It substitutes cash from the sale of the Fulcrum Property for the property itself.  It attaches the interests of the Plaintiffs in the Fulcrum Property (*i.e.,* their lien) to the cash.  It provides for distribution of that cash to the Plaintiffs in accordance with the later judicial determination of the validity, amount, and priorities of their rights and interests in the Fulcrum Property.

This is not a novel concept.  Well-established law permits the free and clear sale of encumbered property in a receivership proceeding.[13]  The Bankruptcy Act of 1898[14] likewise permitted sales free and clear of liens. [15]

---

[13] *See, e.g.,* O.C.G.A.§ 9-8-6 ("Persons holding liens on property in the hands of a receiver may be made parties to the case at any time. Unless otherwise provided in the order, liens upon the property held by any parties to the record, shall be dissolved by the receiver's sale and transferred to the funds arising from the sale of the property."); *Power of court to authorize or direct receiver (or trustee in bankruptcy) to sell property free from liens,* 35 A.L.R. 255 (1925), *supplemented* 78 A.L.R. 458 (1932); 120 A.L.R. 921 (1939).

[14] The Bankruptcy Reform Act of 1978 replaced the Bankruptcy Act.

[15] 4B COLLIER ON BANKRUPTCY ¶70.98 (14th ed. 1978) (Moore and King, editors):

Foremost among the unusual features of bankruptcy sales is the power of the bankruptcy court (heretofore discussed in ¶ 70.97 *supra* [an excerpt follows]) to disregard, in a measure, the rights of lienholders by selling encumbered property free of such encumbrances.  A reasonable though possibly erroneous anticipation of an equity in favor the estate will suffice to override the natural right of lienholders to decide whether and when their security shall be sold, and will allow the trustee to sell more than he actually has, namely, property free of encumbrances.  This power may even be exercised while the validity and existence of the encumbrance is still in the stage of litigation.  Lienholders are without further ado referred to the proceeds.

The text to which this excerpt refers includes the following, *id.* at ¶ 70.97:

The Plaintiffs' Brief asserts that the attachment of their interests in the Fulcrum Property to the proceeds of its sale "does not have the permanence of a *lis pendens*" because "as it now stands, everyone knows that a Lis Pendens holds until the final disposition of the [Fulton County litigation]." (Plaintiff's Brief at 28). Plaintiffs fear that Bay Point will seek release of the funds "because it has the money and motivation to do so." (*Id.*) And they state that the free and clear sale "replaces [Plaintiffs'] centuries old, permanently anchored, *lis pendens* rights (rights the Georgia Court of Appeals ordered remain in place until the conclusion of the State Court litigation) with a fund that could be released by the Court or a subsequent Court at any time." (Plaintiffs' Brief at 8-9).

The Court cannot guarantee that "this or another Court will not reconsider" this. (Plaintiffs' Brief at 28). But the Court agrees that a fundamental principle underlying attachment of liens to proceeds pending determination of their validity and priority is that determination of the validity and priority of liens must occur before disbursement of

---

The power of bankruptcy courts to sell the bankrupt's assets extends also to encumbered property. In the absence of any reference to the contrary in the order of sale, a bankruptcy sale is made subject to valid liens and other encumbrances, in which case the interests of lienholders are in no way affected by the sale. But it may often be impracticable to sell the property subject to liens. Pending litigation over the validity of liens may be such that any sale on that basis could not be consummated. The presence of encumbrances attached to the property may in any event make a sale subject to liens unattractive to prospective purchasers – as, for example, where the interest rate on the encumbrances is in excess of prevailing interest rates at the time of sale. These and many other reasons may indicate that the interests of the bankrupt's creditors will be better served by a sale of the bankrupt's proper free of liens and other encumbrances.

The power of the bankruptcy courts to effect, order, or authorize such a sale has sometimes been questioned, particularly in view of the hardship caused lienholders. True, the lien is transferred to the proceeds and, therefore, is not generally affected in its existence. But the value of the lien as a security is suddenly frozen by the sale and incident transfer to the proceeds, and the lienholder loses any prospect of benefiting by a future enhancement in the value of the property. Yet it is at present well settled that bankruptcy courts may, if administration interests so require, sell property of bankrupt estates free of all claims, liens and encumbrances, including tax liens. The court does not require consent on the part of the lienholder and may sell the property despite his objection thereto.

14

proceeds and that the disregard of this principle would violate the constitutional rights of the holder of the liens. The Court has confidence that this judge and any other judge later assigned to this case or hearing issues on appeal will faithfully recognize and apply this fundamental principle.

Nothing can stop Bay Point from seeking release of the funds. But the attachment of the Plaintiffs' interests to the proceeds means that this Court will not permit release of the funds unless and until, at a minimum, the interests of the Plaintiffs in the Fulcrum Property (even though sold and transformed into sales proceeds) have been finally determined. Plaintiffs have no right to insist that the final determination occur in the Fulton County litigation, but they do have the right (they do not even have to insist on it) to a final determination of their interests that they assert in the Fulcrum Property. The Remand and Stay Order resolved this issue. The Fulcrum Plan does not affect it.

The provisions in the Fulcrum Plan for the subordination of their claims for punitive damages do not, as the Plaintiffs contend, impair any rights they have to collect such claims from the Fulcrum Property or its proceeds. As Part III(C) explains, the potential subordination of any punitive damages recoverable from the Fulcrum Property arises under provisions of the Bankruptcy Code and depends on the remedy to which the Plaintiffs are entitled if they prevail on their fraud claims. The Fulcrum Plan leaves the subordination issue for later determination.

The focus in Fulcrum's bankruptcy case has been on the disputes among Fulcrum, Bay Point, and the Plaintiffs over the validity and priority of their interests in the Fulcrum Property. Plaintiffs' Brief introduces concern for creditors of Liberty and

15

Hampton: "[The sale and attachment of interests to proceeds] does not provide money for the debts of Liberty or Hampton."  (Plaintiffs' Brief at 28).

Perhaps applicable statutes of limitation on some claims of creditors existing at the time of the transfer in September 2013 have not expired.  Hampton and Liberty might have assets to satisfy such claims if Plaintiffs succeed on their contention that the *status quo ante* should be restored such that Hampton owns the Fulcrum Property subject to Liberty's security deed and debt (as of September 2013) of $36,671,321.37.

The free and clear sale of the Fulcrum Property and the attachment of interests in it to the sales proceeds does not impair the rights of Hampton, Liberty, or their creditors.

Plaintiffs' concern for the creditors of Hampton and Liberty presumably arises only after full payment of the Plaintiffs' claims.  If the *status quo ante* is restored as the Plaintiffs request and if the sales proceeds exceed Plaintiffs' interests (as judicially determined), the surplus would belong first to Liberty (by virtue of its restored security deed) and then to Hampton (by virtue of its restored ownership).

Determination of interests attached to the proceeds of a free and clear sale is an *in rem* proceeding.[16]  Liberty and Hampton – through Mr. Leventhal – have notice of the sale of the Fulcrum Property and the attachment of any interests they may have to the proceeds.  They have had, and will continue to have, the right to participate in the

---

[16] Plaintiffs' Brief notes that "absent consent Bankruptcy Courts do not have jurisdiction, and are not set up, to finally resolve underlying state-law disputes over ownership of property."  (Plaintiffs; Brief at 7; *see also id.* at 9, 11).  To the contrary, 28 U.S.C. § 1334(e)(1) vests jurisdiction in the district court of "all the property, wherever located, of the debtor, as of the commencement of such case, and of property of the estate," and the United States District Court has referred all bankruptcy cases and proceedings to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a).  *See* LR 83.7, NDGa.  As Part III(A) explains, the Fulcrum Property is property of its estate.

proceedings in this Court that will determine *all* the interests in the Fulcrum Property and provide for the distribution of the sales proceeds in accordance with those interests.

Any remaining creditors of Hampton and Liberty do not have interests in the Fulcrum Property that would entitle them to notice of the free and clear sale, but they would not have notice of any disposition of the Fulcrum Property under applicable nonbankruptcy law either.    To the extent that any creditor of Hampton or Liberty claims a derivative interest in the Fulcrum Property, it may assert such a claim in the proceedings for determination of interests in the proceeds.

It is important to note that the Fulcrum Plan and the free and clear sale do not have the consequences that the Plaintiffs' Brief describes.

1.  The free and clear sale does not make "permanent" either the fraudulent transfer or the "fraud on the Georgia Court System" by selling the Fulcrum Property, as Plaintiffs' Brief asserts.  (Plaintiffs' Brief at 2).  Nor does it "affront Federalism by all-but eliminating the motivation for pursuing the first count of the [complaint in the Superior Court], which seeks to undo the 2014 collusive judgment."  (Plaintiffs' Brief at 2; *see also id.* at 12, 27).  The Remand and Stay Order leaves these issues for the Superior Court to determine.  Their resolution is necessary for determining the Plaintiffs' interests in the Fulcrum Property and, therefore, the distribution of the sales proceeds to which their interests attach.  If setting aside the consent judgment is important for the Plaintiffs to enforce their claims against the Fulcrum Property, they should be motivated to do so because their rights in the proceeds are the same as their rights in the Fulcrum Property.  If fraud occurred, it has consequences.

17

2.  The free and clear sale does not benefit the holders of equity interests in Fulcrum unless the sales proceeds are sufficient to satisfy all the interests in the Fulcrum Property and all of Fulcrum's creditors.  The Plaintiffs' assertion that the free and clear sale benefits Fulcrum (Plaintiffs' Brief at 2, 4, 5-6, 27-28) is technically correct because it is Fulcrum that is the seller (under the control of the Plan Administrator), but it overlooks the fact that, under the Bankruptcy Code and the terms of the Fulcrum Plan, the owners of Fulcrum will not receive a penny unless and until all interests in the Fulcrum Property are satisfied and all other claims are paid.  The other claims include actual and punitive damages that the Plaintiffs recover, even if the punitive damages are subordinated.

3.  Confirmation of the Fulcrum Plan does not "compound and cement the fraud committed by the Leventhal Entities in 2013/2014 by allowing the Property to be permanently taken and sold for the benefit of Fulcrum and Bay Point – respectively, the bad actor who took the Property from the creditors of Liberty and Hampton and the opportunist that sought to capitalize Fulcrum's acts with full knowledge."  (Plaintiffs' Brief at 5-6).  The Fulcrum Property is not "permanently taken," but transformed into cash proceeds that will first be disbursed to holders of interests – including any interests of the Plaintiffs – in the Fulcrum Property.   Thereafter, Fulcrum's creditors must be paid in full.  Only then does the sale benefit the owners of Fulcrum.

Plaintiffs' analogy that permitting a free and clear sale is "akin to a district attorney allowing a 'thief' and the 'fence' that knowingly accepted stolen property to sell the property for their own benefit to the exclusion of the rightful owners" (Plaintiffs'

Brief at 5-6) ignores the purpose and effect of a free and clear sale. Attachment of all interests in the Fulcrum Property to the proceeds pending judicial determination of all interests in the property ensures that the "rightful owners" receive what their interests entitle them to.

4. The Fulcrum Plan, the free and clear sale, the attachment of the Plaintiffs' interests to the proceeds, and the requirement that the Plaintiffs cancel their *lis pendens* of record do not (1) "summarily deprive [the Plaintiffs] of the right to collect on the $3.4 million judgment they hold against Liberty" (Plaintiffs' Brief at 2, 8) or "preclude them from collecting the Liberty Judgment from anyone" (*Id.* at 28); (2) "cut [the Plaintiffs] off from essentially all rights against Liberty and Hampton" (*Id.* at 28); or (3) limit their rights to recover on their tort claims. (*Id.* at 28).

The required cancellation of the *lis pendens* of record to permit the free and clear sale (as 11 U.S.C. § 1142(b) permits) does not cancel the rights that it gives the Plaintiffs. Nothing precludes the Plaintiffs from seeking to collect the Liberty Judgment from Liberty itself or any party. And again, if the Plaintiffs establish their right to collect the judgment or any of their tort claims from the Fulcrum Property, they will collect it from the sales proceeds that are substituted for it.

5. The attachment of liens to the sale of the Fulcrum property does not establish a fund "to pay the debts of Debtor Fulcrum" (Plaintiffs' Brief at 11), and the sales proceeds will not be held "for the benefit of Fulcrum and <u>its</u> creditors." (*Id.* at 28) (emphasis in original). The fund exists to hold the proceeds of the sale pending judicial determination

of the interests of all parties – including the Plaintiffs – and disbursement of the proceeds in accordance with those determinations.

6.  The free and clear sale does not give "the bad actors (the Leventhal Entities and Bay Point) the full benefit of the fraudulently transferred property, complete with a 'get out of jail free card for Liberty.'"  (Plaintiffs' Brief at 11).  Nor do the Plaintiffs "lose any right or ability to collect against the actual assets of Liberty, the ability to collect on the Liberty Judgment meaningfully, and the bulk of the reason to pursue the claims they have been pursuing for seven years to set aside the 2014 Judgment – and are forced to be complicit in their own loss."  (Plaintiffs' Brief at 11-12).

If Liberty has any assets other than the security deed on the Fulcrum Property that the Plaintiffs seek to restore, the free and clear sale does not prevent the Plaintiffs from pursuing them.  If the Plaintiffs have a right to collect the Liberty Judgment and any other claims against Liberty from the Fulcrum Property, that same right permits collection from the proceeds of its sale.

7.  The free and clear sale does not limit the Plaintiffs' tort remedies or ability to collect punitive damages from the Fulcrum Property as they contend.  (Plaintiffs' Brief at 2, 8, 10).  Again, whatever rights the Plaintiffs have to collect any of their claims on which they prevail from the Fulcrum Property, they have the same rights to collect from the proceeds. Any subordination of punitive damages will occur under provisions of the Bankruptcy Code, as Part III(C) discusses, not as a result of the free and clear sale.

In summary, the free and clear sale with the attachment of the Plaintiffs' interests to the proceeds does not impair the Plaintiffs' interests in the Fulcrum Property.  Indeed,

it is consistent with their position that they have the "rights to pursue every remedy available to them – including the return of the Property to Hampton and Liberty so it can be sold or the rents it generates can be collected to satisfy the Liberty Judgment **and** their claims for fraudulent transfer." (Plaintiffs' Brief at 20) (emphasis in original). The Fulcrum Property does not generate any rents. The free and clear sale accomplishes the Plaintiffs' objective of selling it. The attachment of its interests to the sales proceeds permits them to pursue their objective of satisfaction of the judgment and other claims through its sale.

### III.  The Plaintiffs Are Not Likely to Prevail on Appeal

The Plaintiffs' Brief identifies a number of reasons for reconsideration of the confirmation order and for its reversal on appeal.

In summarizing their position, the Plaintiffs state that the "fundamental problem" with confirmation of the Fulcrum Plan is that "the Court is (1) mandating the free and clear sale of property that all credible evidence shows does not actually belong to [Fulcrum], (2) using the proceeds to benefit *[Fulcrum]* and a *creditor of Fulcrum that was on specific notice* of the defects in [Fulcrum's title], (3) doing so in a manner that appears permanent, and (4) forcing [the Plaintiffs] to act against their own volition to do it." (Plaintiffs' Brief at 4).

The Court quickly disposes of Points (2) and (3).

As Part II explains, the proceeds from the sale will be held for distribution to the holders of interests that are attached to the proceeds in accordance with later judicial determination of those interests. If the use of the proceeds benefits Fulcrum and a

Case 24-56114-pwb   Doc 326   Filed 10/31/25   Entered 10/31/25 15:00:02   Desc Main
Document    Page 22 of 44

creditor with notice, it will be because of a final judicial determination that they have interests in the Fulcrum Property (notwithstanding notice) with priority over other interests.

A free and clear sale is obviously permanent, and the attachment of interests to the proceeds is permanent until final judicial determination of the interests occurs.  But as Part II also explains, the attachment of interests to the proceeds does not determine, permanently or otherwise, what the interests and priorities the Plaintiffs, Bay Point, and Fulcrum have in the proceeds or the Fulcrum Property for which they are substituted.

The Court considers issue (1) in Part III(A) and issue (4) in Part III(B).

The Plaintiffs also assert that "the Court does not have the authority to sell the [Fulcrum' Property] free and clear of the Lis Pendens because 11 U.S.C. § 363(f) only authorizes a Bankruptcy Court to sell free and clear of 'interests' in property." (Plaintiffs' Brief at 6, 12-18).[17] Part III(B) addresses this question.

Part III(C) discusses the contention that the confirmation order limits their rights to collect claims against Liberty and Hampton for actual and punitive damages from the Fulcrum Property that arise from its fraudulent transfer and other torts.  (Plaintiffs' Brief at 18-22).

Part III(D) explains why Bay Point's conduct does not preclude confirmation of the Plan and the free and clear sale of the Fulcrum Property for which it provides.

---

[17] The Court is not selling the Fulcrum Property.  More accurately, the question is whether the Court may authorize the sale of the Fulcrum Property free and clear of the Plaintiffs' interests in it.

**A.  The Fulcrum Property Is Property of the Estate**

According to the Plaintiffs, the evidence establishes that the foreclosure deed transferring the Fulcrum Property was fraudulent, that the purpose of the transfer was to hinder, delay and defraud creditors of Liberty and Hampton, and that Fulcrum and Bay Point had direct and constructive notice the "Fulcrum Deed was a fraud."  (Plaintiffs' Brief at 4).

The controlling law, the Plaintiffs state, is that a fraudulent deed conveys nothing and that the Fulcrum Property continues to belong to Liberty and Hampton as a matter of substantive law, where it is subject to the claims of the Plaintiffs.  (*Id.*).

In the Fulton County Litigation, the Special Master recommended the grant of summary judgment to the Plaintiffs on the counts of the complaint seeking to set aside the transfer of the Fulcrum Property to Fulcrum and to make Fulcrum liable for the judgment under theories of continuation, successor, partnership or joint venture liability.[18]  To this extent, evidence "establishes" that the transfer of the Fulcrum Property was a fraudulent transfer and that its purpose was to hinder, delay, and defraud the Plaintiffs.

But the Special Master is not the judge or jury, and the Superior Court of Fulton County has not yet determined whether to adopt the Special Master's Report in whole or in part.  Factual issues, therefore, have not been determined.

Moreover, the Special Master did not apply the "controlling law" that the Plaintiffs posit to the facts as he found them.  Instead, the Special Master recommended

---

[18] Special Master Report *supra* note 7.

that Plaintiffs' judgment against Liberty (with post-judgment interest) and any other

amounts awarded at trial in this action, "shall attach to Fulcrum and its assets, including,

without limitation, the [Fulcrum] Property."  (Special Master Report at 105).[19]

Indeed, this is the relief the Plaintiffs request in their complaint, as amended, in

the Fulton County Litigation.[20]  In paragraph 5 of the prayer for relief in the complaint

and the amendment, the Plaintiffs pray "that the transfers of the Conveyed Assets [a

defined term in ¶ 37 that includes the Fulcrum Property acquired at the foreclosure sale]

and the release of the Security Interest be disregarded *and that Plaintiffs be allowed to*

*attach and levy execution on the Conveyed Assets in order to satisfy the amounts they are*

*owed as a result of the [Liberty] Judgment and such other damages as may be*

*awarded*."[21]

If the Superior Court Judge adopts the Special Master Report, the result is that

Fulcrum owns the Fulcrum Property.  It is property of Fulcrum's estate under 11 U.S.C.

---

[19] At the hearing on the Plaintiffs' motion to reconsider and for a stay, counsel for the Plaintiffs asserted that the Special Master had not considered Count I of their complaint to set aside the consent judgment as collusive and that the Special Master's recommended remedy on the fraudulent transfer claim did not preclude a different remedy on Count I.  The Court will not determine that issue.
        The Court notes, however, that it is the foreclosure sale, not the consent judgment, that transferred the Fulcrum Property to Fulcrum.  Moreover, the allegations in Count I do not appear to provide a basis for a different remedy than the allegations in Count II.
[20] Complaint, Superior Court of Fulton County, Civil Action No. 2017CV295620 (Sept. 22, 2017), as amended (April 14, 2023).  Copies of the complaint and the amendment are attached as Exhibit 5 to the Plaintiff's Motion to Remand Or In the Alternative Abstain filed in the adversary proceeding that removed the Fulton County Litigation.  [Adv. No. 24-5217, Doc. No. 5].  Exhibit 5 is at Doc. No. 5-5.
[21] Complaint at 21 [Adv. No. 24-5217. Doc. No. 5-5 at 22]; Amended complaint at 5-6 [Adv. No. 24-5217, Doc. No. 5-5 at 5-6] (bracketed text and emphasis added).

§ 541(a)(1), which includes "all legal or equitable interests of the debtor in property as of the commencement of the case."

The Fulcrum Property is property of the estate even if the Plaintiffs eventually establish that they are entitled to a judgment setting aside the foreclosure deed to Fulcrum because it was a fraudulent transfer. A fraudulent transfer is *avoidable,* not *void.*[22] The foreclosure deed itself is not fraudulent; no one suggests that it is a forgery. The cases cited in Plaintiffs' Brief to support its assertion that a fraudulent deed conveys nothing (Plaintiffs' Brief at 23)[23] do not support the proposition that an authorized, duly executed and recorded deed that effects a fraudulent transfer is effectively *void ab initio.*[24]

In accordance with these principles, Fulcrum held legal title to the Fulcrum Property as of the commencement of its case, subject of course (by virtue of the *lis pendens*) to divestment depending on the determination of the Plaintiffs' claims that title should be restored to Hampton subject to Liberty's reinstated security deed.

Finally, the Plaintiffs' claims that a fraudulent transfer occurred are subject to legal arguments that no fraudulent transfer occurred. Some of those arguments resulted in dismissal of the Plaintiffs' complaint for failure to state a claim, which the Georgia

---

[22] *See* RES-GA Diamond Meadows, LLC v. Robertson, 576 B.R. 684, 708 (Bankr. N.D. Ga. 2017) ("[O.C.G.A. § 18-2-77(a)(1)] makes the transfer *voidable,* rather than void.") (emphasis in original).

[23] Plaintiffs' Brief cites: Nussbaum & Dannenburg v. Heilbron, 63 Ga. 312, 316 (1879) ("Such a fraud as this cannot stand against legal process, any more than it can stand in a court of equity."); Crawford v. Williams, 149 Ga. 126, 99 S.E. 378, 382 (1919) ("Fraud is not a thing that can stand, even when robed in a judgment."); Smith v. Cuyler, 78 Ga. 654, 659–60, 3 S.E. 406, 407 (1887) ("A collusive judgment is open to attack whenever and wherever it may come in conflict with the rights or the interest of third persons. Fraud is not a thing that can stand, even when robed in a judgment.").

[24] As such, the foreclosure deed is totally unlike the hypothetical deed conveying title to the Empire State Building executed by someone with no authority to act on behalf of the owner.

Court of Appeals reversed. *Lyle v. Fulcrum Loan Holdings, LLC,* 354 Ga. App. 742, 841 S.E.2d 182 (2020).

The Plaintiffs' Brief observes that determination of their interests in the Fulcrum Property involves "complex state law and disputed factual questions." (Plaintiffs' Brief at 2, 7, 23). Nevertheless, the Plaintiffs are confident that they have a substantial likelihood of prevailing on their claims and that "the law and evidence are overwhelming." (Plaintiffs' Brief at 23, 23-26). Fulcrum, on the other hand, is confident that a fraudulent transfer did not occur as a matter of law.[25] The Special Master Report considers and rejects many legal defenses and found that no material facts are in dispute with regard to the fraudulent conveyance claim.

Regardless, the Plaintiffs have not yet prevailed on their fraud claim, and the Fulcrum Property is property of the estate because Fulcrum currently has legal title to it.[26]

Fulcrum's and Bay Point's notice of the fraud as alleged may be material to the determination of their interests in the Fulcrum Property and the proceeds from its sale, but it is immaterial to the issue of whether the Fulcrum Property is property of the estate.

**B. The Sale of the Fulcrum Property Free and Clear of the Plaintiffs' Interests In It Is Permissible**

Section 363(f) of the Bankruptcy Code provides that the Court may authorize the sale of property of the estate "free and clear of any *interest* in such property of any entity other than the estate." 11 U.S.C. § 363(f) (emphasis added).

---

[25] Fulcrum Loan Holdings, LLC'S Response in Opposition to Lyle & Cary's Amended Motion For Reconsideration and/or to Stay Pending Appeal [Doc. No. 321].

[26] This Court looks forward to the Superior Court's determination of whether, as the Special Master concluded, the value of the Fulcrum Property, which the parties dispute, is material to the fraudulent transfer issues, and whether a jury question exists with regard to intent to defraud.

The Plaintiffs contend that § 363(f) does not permit the sale of the Fulcrum Property free and clear of their *lis pendens* because "a *lis pendens* is not an interest in property by any definition." (Plaintiffs Brief at 6). Rather, they explain, a *lis pendens* is "merely notice there is a dispute that affects title to the property." (*Id.*).

Plaintiffs' Brief cites *Navy Federal Credit Union v. McCrea,* 337 Ga. Ap. 103, 107, 786 S.E.2d 707, 710 (2016),[27] which states:

> [T]he doctrine of lis pendens, which has been codified in OCGA § 44-14-610 *et seq.,* merely "imputes[s] to all third parties constructive notice of the litigation and of the claims against property being asserted in the pleadings and [binds] third parties to the outcome of the litigation."

The Court need not determine whether a *lis pendens* notice is an "interest" in property for purposes of § 363(f) because it does not matter. As *Navy Federal Credit Union v. McCrea* notes, the point is that the *lis pendens* gives notice of the *claims against property* that are being asserted.

The Plaintiffs claim an interest in the Fulcrum Property, which is property of the Fulcrum estate as just discussed, to collect their judgment against Liberty and other claims against it. Section 363(f) permits the sale of property of the estate free and clear of interests. So, § 363(f) authorizes the sale of the Fulcrum Property free and clear of the Plaintiffs' interests.

---

[27] The court quoted Vance v. Lomas Mortg. USA, Inc., 263 Ga. 33, 35(1), 426 S.E.2d 873 (1993). Ellipses in the quoted material are original in the *McRea* opinion.

The remaining question is what happens to the *lis pendens* notice.  The Plaintiffs contend that the requirement that they cancel it is improper.[28]  (Plaintiffs' Brief at 4, 8, 22).

The requirement that Plaintiffs cancel their *lis pendens* follows logically and statutorily from confirmation of the Fulcrum Plan that provides for sale of the Fulcrum Property free and clear of their interests in it and attachment of their interests to the proceeds.

The sale is free and clear of the Plaintiffs' interests of which the *lis pendens* gives notice.  The *lis pendens* creates no rights or interests in the Fulcrum Property, and it has already served its purpose of providing notice to the world of the Plaintiffs' interests in the Fulcrum Property.

As Part II explains, cancellation of the *lis pendens* does not affect the Plaintiffs' interests in the Fulcrum Property for purposes of determining their interests in the sales proceeds substituted for it.  The determination of interests in the sales proceed will be based on the existence of the *lis pendens* on the Fulcrum Property for which the sales proceeds are substituted.

Although the sale of the Fulcrum Property will be free of the Plaintiffs' interest of which the *lis pendens* gives notice, the existence of the *lis pendens* clouds the title of a purchaser despite the removal of the Plaintiffs' interests.  Removal of the *lis pendens* of

---

[28] The Plaintiffs characterize the requirement that they cancel the *lis pendens* as a "permanent mandatory injunction" that is "highly improper," issued "without holding an evidentiary hearing and without substantively considering the facts and law."  (Plaintiffs'' Brief at 22).  As the text explains, cancellation of the *lis pendens* follows from confirmation of the Fulcrum Plan.  The Court conducted evidentiary hearings on confirmation over several days and considered the facts and law relating thereto.

record is thus necessary to convey clear title to the Fulcrum Property.  As such, cancellation of the *lis pendens* is necessary to consummation of the Fulcrum Plan that provides for a free and clear sale of the Fulcrum Property.

Section 1142(b) of the Bankruptcy Code authorizes the Court to direct a "necessary party" to execute or deliver any instrument required to effect a transfer of property dealt with by a confirmed plan," including "satisfaction of any lien."  11 U.S.C. § 1142(b).

As Part II explains, the interests the Plaintiffs claim in the Fulcrum Property constitute the assertion of a lien, as defined in 11 U.S.C. § 101(37), on it.  Because § 363(f) permits sale free and clear of the Plaintiffs' interests, a purchaser is entitled to a title that is unencumbered by their asserted lien.  The *lis pendens* notice clouds the purchaser's title and effectively leaves the asserted lien in place.  Cancellation of the *lis pendens* is, therefore, necessary to consummation of the Fulcrum Plan through the free and clear sale.

Satisfaction of the Plaintiffs' lien occurs through cancellation of the *lis pendens* notice.  Thus, § 1142(b) authorizes the court to direct the Plaintiffs to cancel their *lis pendens* of record while its effect remains for purposes of determining their interests in the proceeds of the sale.

The Plaintiffs contend that their *lis pendens* cannot be cancelled until their interests are resolved in the Fulton County litigation under an Order of the Georgia Court of Appeals in *Wayne Lyle et al. v. Liberty Capital, LLC et al,* No. A19E0009 (Georgia

Court of Appeals, August 27, 2018) (copy attached to Plaintiffs' Brief as Exhibit 1, Doc.

No. 296, Part 2).  (Plaintiffs' Brief at 7, 12-13).  The Court of Appeals stated:

>  "[O]ur law is clear 'that a valid notice of lis pendens remains in effect until a
> final judgment has been entered in the action *and the time for appeal has expired*.'
> (Emphasis supplied.)  *Exec. Excellence, LLC v. Martin Bros. Investments, LLC,*
> 309 Ga. App. 279, 283 (1)(a) (710 SE2d 169) (2011)."

Fairly read in the context of a later bankruptcy case of the holder of record title to

property subject to a *lis pendens* and a free and clear sale in the case, the unremarkable

effect of the Order is that the interests of the filing party stated in the *lis pendens* notice

must be judicially determined before the sales proceeds substituted for the property

subject to those interests are disbursed.  This is precisely what happens here.  In the

context of this bankruptcy case, the Order does not give the Plaintiffs a right to have their

interests determined exclusively in the Fulton County Litigation or to prevent an

otherwise proper free and clear sale and the attachment of all the interests they may have

in the Fulcrum Property to the sales proceeds.  The order confirming the Fulcrum Plan

does not "defeat" the ruling of the Georgia Court of Appeals as the Plaintiffs Brief

asserts.  (Plaintiffs' Brief at 7).

The Court has found only two cases that address the issue of whether § 363(f)

permits the sale of property free and clear of a *lis pendens.*

In *In re Adamson,* 312 B.R. 16 (Bankr. D. Mass. 2004), a chapter 13 debtor

proposed to sell real estate free and clear of encumbrances.  The *lis pendens* issue arose

from state court litigation in which the plaintiff sought specific performance of a

prepetition agreement for the purchase of the property and had filed a *lis pendens*.  The trial court dismissed the complaint, and the plaintiff's appeal was pending.  The *lis pendens* remained in effect pending appeal.

The plaintiff objected to the proposed sale.  The court concluded that the *lis pendens* notice did not give the plaintiff any rights in the property and that, by virtue of the dismissal of the complaint, the plaintiff had no right to specific performance and no interest in the property.

The court approved the sale but declined to authorize the sale free and clear of the *lis pendens* based on the conclusions that (1) the *lis pendens* notice was only notice of the pending litigation and did not establish an interest in the property; and (2) the plaintiff did not have a lien on or interest in the property.

The undersigned might conclude that the plaintiff had an interest in the property.  The pending appeal could result in a determination that the plaintiff had a right to specific performance of the purchase contract.  The *lis pendens* preserved that remedy against a purchaser of the property.  The possibility that the plaintiff could acquire title to the property seems to be an interest in it.

Regardless, the situation is different here.  The Plaintiffs have an interest in the Fulcrum Property, and the cancellation of their *lis pendens* occurs pursuant to § 1142(b), not § 363(f).

The other court, *In re Mundy Ranch, Inc.,* 484 B.R. 416 (Bankr. D. N.M. 2012), agreed with the *Adamson* conclusion that a *lis pendens* notice is not an interest in property but authorized a sale of property free and clear of the interest of which the *lis*

31

*pendens* gave notice.  There, the chapter 11 debtor in possession filed a motion to sell its real estate free and clear of the claim of a minority shareholder in pending litigation for dissolution of the corporation and the partition of its property.  The minority shareholder had filed a *lis pendens.*

The court concluded that § 363(f) authorized the sale of the property free and clear of the partition claim but that it did not authorize the sale free and clear of the *lis pendens*.  Regarding concerns about the cloud on the title to the property arising from the *lis pendens,* the court ruled, *id.* at 425:

> The Court has determined that [the debtor] will be able to sell the [property] free and clear of [the shareholder's] Partition Claim. The Lis Pendens simply provides notice of that claim. Thus, even though the Court's ruling will not affect the existence of the Lis Pendens, the Buyers will not be bound by the claims or any other proceedings in the State Action, including the Partition Claim. The Lis Pendens will survive, but it will have no further legal effect as to the [property] upon consummation of the sale to the Buyers and will not cloud the Buyers' title to the [property].  If [the shareholder] were later to prevail on the Partition Claim, the [property] will not be subject to partition.

This Court's ruling has the same result as *In re Mundy*. The difference is that elimination of the Plaintiffs' claims against the Fulcrum Property occurs through cancellation of the *lis pendens* (which serves no purpose whatsoever after the free and clear sale) under § 1142(b) rather than through provisions of a free and clear sale order that eliminate it as a cloud on the purchaser's title.  Because *Mundy* did not involve a

confirmed plan, the court did not address § 1142(b) as an alternative way to remove the cloud on title.

The Plaintiffs contend that Congress did not intend to permit the sale of property free and clear of a *lis pendens* because "it did not want to allow a Bankruptcy Court (even for the sake of great expedience or to return property to the stream of commerce) to take property that did not belong to the debtor and use it to repay the debtor's debts." (Plaintiffs' Brief at 17). The free and clear sale does nothing of the sort. If the Fulcrum Property does not belong to Fulcrum, then it presumably belongs to Hampton subject to Liberty's deed to secure debt and the Plaintiffs can collect their claims from it. The attachment of all interests to the proceeds of the sale insures that, if the Plaintiff prevails on its theories, it will get the proceeds to the extent of its claims.

The Plaintiffs also contend that the Confirmation Order and the operation of § 1142(b) amounts to the issuance of a preliminary injunction without meeting the standards for issuance of a preliminary injunction. In the sense that the Confirmation Order and § 1142(b) require the Plaintiffs to cancel the *lis pendens,* the effect is the same as an injunction. But the requirement is not an "injunction" that requires compliance with, or consideration of, the requirements for issuance of an injunction in Rule 65 of the Federal Rules of Civil Procedure, *applicable under* Rule 7065 of the Federal Rules of Bankruptcy Procedure.

The directive to the Plaintiffs arises under the terms of a confirmed plan and § 1142(b). Confirmation of a plan takes place, after notice and a hearing, only if the plan meets the confirmation requirements of § 1129. Nothing is preliminary about a chapter

33

11 plan; it is a final determination that the plan meets confirmation requirements.  Under

§ 1141(a), "the provisions of a confirmed plan bind . . . any creditor," whether or not the

creditor has accepted the plan.

Section 1142(b) authorizes the court to direct the Plaintiffs to cancel the *lis*

*pendens,* as explained above.  Nothing in § 1142(b) requires the court to consider

standards for granting injunctive relief.

In summary, § 363(f) authorizes sale of the Fulcrum Property free and clear of the

interests of the Plaintiffs, which constitute a lien.  Section 1142(b) authorizes the Court to

order the Plaintiffs to satisfy their lien, which occurs through cancellation of the *lis*

*pendens*.

**C.  Limitations on Plaintiff's Collection of Punitive or Other Tort Damages From
the Fulcrum Property Arise From Provisions of the Bankruptcy Code, Not From
the Fulcrum Plan or the Free and Clear Sale**

The Plaintiffs contend that the Fulcrum Plan and the free and clear sale of the

Fulcrum Property limits their ability to collect on the punitive damage and other tort

claims against Liberty, Fulcrum, and Hampton from the Fulcrum Property.  (Plaintiffs'

Brief at 5, 8, 10-11, 18-22).   The argument ignores the fact that provisions of the

Bankruptcy Code, not the Fulcrum Plan or the free and clear sale, that impose limitations

on their rights.

Section 724(a), applicable in a chapter 7 case, provides, "The trustee may avoid a

lien that secures a claim of a kind specified in section 726(a)(4) of this title."  11 U.S.C.

§ 724(a).  Claims specified in section 726(a)(4) are "any allowed claim, whether secured

or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive

damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim."

Further, in a chapter 7 case, § 726(a)(4) provides for payment of punitive damages (and other claims it lists) only after the payment of claims entitled to priority under 11 U.S.C. § 507, timely filed unsecured claims, and tardily filed unsecured claims.

These provisions effectively subordinate a claim for punitive damages to the claims of unsecured creditors.

These sections do not apply in a chapter 11 case, but a confirmation requirement in 11 U.S.C. § 1129(a)(7) requires that, unless every creditor has accepted the plan, the creditor "will receive or retain under the plan . . . property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title."  This is sometimes referred to as the "best interest of creditors" or "liquidation" test.

Fulcrum has unsecured creditors that did not accept the plan.  Therefore, § 1129(a)(7) requires that the plan provide for distributions to unsecured creditors that are not less than what they would receive in a chapter 7 case.  Because punitive damages are subordinated in a chapter 7 case, the Fulcrum Plan must provide for subordination of the Plaintiffs' punitive damages claims.

Furthermore, a plan may contain "any provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1123(b)(6).  The provision for subordination of the Plaintiffs' punitive damages claim is consistent with the

35

provisions of chapter 7 for the treatment of this aspect of their claim. And because the Plaintiffs' punitive damages claim would be subordinated in a chapter 7 case, the plan provision meets the best interests test with respect to that claim.

The claim of the Plaintiffs that they can recover punitive damages from the Fulcrum Property attaches to the proceeds of the sale. The free and clear sale and attachment of their interests to the proceeds does not affect their rights regarding collection of punitive damages from the proceeds.

What *does* affect their rights is the remedy to which they are entitled if they prevail on their claims to set aside the foreclosure sale and consent judgment.

Plaintiffs contend that the foreclosure deed and consent judgment should be set aside so that title to the Fulcrum Property becomes vested in Hampton, subject to Liberty's security deed. The Plaintiffs can then attach their judgment to Liberty's security deed and, through enforcement of the security deed, collect from the Fulcrum Property.[29] They contend that the same rights extend to any judgment they receive against Liberty for punitive or actual damages. Under this scenario, Fulcrum has no interest in the Fulcrum Property (and has no interests in the proceeds of the sale), and the Bankruptcy Code provisions that subordinate the Plaintiffs' punitive damages claims do not apply.[30]

---

[29] Plaintiffs do not explain precisely how this would happen. Perhaps the Superior Court could appoint a receiver for Liberty Capital who could exercise Liberty Capital's rights under the security deed to produce cash for distribution to the Plaintiffs on their claim. Perhaps the Superior Court could order a sale of the Fulcrum Property and order that the Plaintiffs receive the proceeds to the extent of their claims.
[30] The Court expresses no opinion on whether equitable principles under Georgia law might limit the Plaintiffs' right to collect punitive damages from the Fulcrum Property or its proceeds.

36

The Special Master Report, however, provides for a different remedy:  the
attachment of the judgment and any other amounts awarded against Liberty to the
Fulcrum Property.  (Special Master Report at 105).  The Special Master's remedy seems
consistent with the directive of O.C.G.A. § 18-2-77(a)(1), which authorizes "avoidance of
the transfer or obligation to the extent necessary to satisfy the creditor's claim."  In this
circumstance, Fulcrum owns the property, and the subordination provisions of the
Bankruptcy Code apply.

The determination of the remedy to which the Plaintiffs are entitled is for another
day.  For present purposes, the issue is whether confirmation of the Fulcrum Plan or the
free and clear sale impermissibly limits the Plaintiffs' rights to collect punitive damages
from the Fulcrum Property.  They do not.

**D.  Bay Point's Alleged Notice of the Fraud Does Not Prevent Confirmation of the
Fulcrum Plan**

In the part of their brief titled, "Bay Point is precluded from the fund-relief it
seeks," the Plaintiffs assert, "He who would have the equity of an injunction such as the
mandatory injunction and sale at issue here, must himself have done equity."  (Plaintiffs'
Brief at 29).

The "mandatory injunction" presumably is the requirement for the Plaintiffs to
cancel their lis pendens.  As Part III(B) explains, this requirement is based on 11 U.S.C.
§ 1142(b), which follows from authorization of a free and clear sale, which follows from
confirmation of the Fulcrum Plan that Bay Point proposed.

So, the issue is whether Bay Point engaged in some type of conduct that precludes
confirmation of the Fulcrum Plan.  The Plaintiffs assert, "Bay Point is precluded from the

relief it seeks because it took the Fulcrum Property knowing that the Lis Pendens was there and on direct notice of the fraud." (Plaintiffs' Brief at 29).

Plaintiffs' Brief cites no authority for its position other than Georgia's codification of the equitable principle that "He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action." O.C.G.A. § 23-1-10. The argument continues with a repetition of Plaintiffs' erroneous position that the free and clear sale impairs their rights for the benefit of Bay Point that Part II considers in detail.

The argument concludes (Plaintiffs' Brief at 30):

[The Plaintiffs] do not believe it is appropriate for this Court to act to help a party escape the very risk and delay it knowingly courted – especially when helping that party hurts parties who already all-but exhausted themselves against a well-funded corporate litigant intent on using Leventhal's fraud to benefit itself. While the interest of expediency may sometimes favor returning property to the stream of commerce, it should not be allowed to do so at the expense of fundamental rights.

The Court questions whether knowingly taking a risk by lending money secured by a security deed on property that is subject to a *lis pendens* giving notice of litigation involving fraud concerning the property violates any principle of equity. Plaintiffs' Brief cites no authority for the proposition.

If it does, it may affect Bay Point's rights in the Fulcrum Property. Although the Court cannot currently conceive of any reason why it should, that question, if asked, will

38

be determined as part of the determination of the Plaintiffs' and Bay Point's rights in the Fulcrum Property.

The issue here, however, is whether Bay Point's conduct provides a basis for denial of confirmation of the plan it proposed. Bay Point is a creditor of Fulcrum and as such has the right to file a plan. 11 U.S.C. § 1121(c). The Court must confirm a plan if it meets the requirements of 11 U.S.C. § 1129.

Although the Plaintiffs' Brief does not mention the good faith requirement of 11 U.S.C. § 1129(a)(3), that is the only confirmation requirement that arguably provides a basis for denying confirmation on the facts the Plaintiffs assert. But even if, as the Plaintiffs' Brief asserts, Bay Point knowingly undertook the risk of delay and potential loss of collateral when it provided funding to Fulcrum secured by a security deed on the Fulcrum Property, this circumstance provides no basis for a conclusion that Bay Point did not propose the plan in good faith.

## IV.  The Plaintiffs Will Not Suffer Irreparable Injury in the Absence of a Stay

As Parts II and III(C) explain in detail, the confirmation of the Fulcrum Plan and the sale of the Fulcrum Property free and clear of the Plaintiffs' interests and the attachment of those interests to the proceeds of the sale does not affect whatever rights they have to collect their claims from the Fulcrum Property. They have not identified any other harm to them that the free and clear sale will cause. They will suffer no harm if the free and clear sale occurs.

Case 24-56114-pwb    Doc 326    Filed 10/31/25    Entered 10/31/25 15:00:02    Desc Main
Document    Page 40 of 44

**V.  A Stay Will Substantially Injure Other Parties**

It is time for the Fulcrum Property to be sold.  Fulcrum has had the opportunity for over a year to file a plan for the Fulcrum's reorganization but has not done so.  The Fulcrum Property cannot be sold or refinanced because of the filing of the *lis pendens* and the underlying disputes among the Fulcrum estate, the Plaintiffs, and Bay Point.  In the meantime, the Hampton Preserve project requires funding for operations, maintenance, and repairs.

The Hampton Island Project has been in financial distress for years.  It cannot regularly pay the persons who work to operate and maintain it.  The golf course requires regular upkeep and maintenance that has not occurred.  The inability to repair, maintain, and properly operate the Hampton Island Property may result in a decline in its value.

Bay Point (especially if it turns out to be junior to the Plaintiffs) has an interest in maximization of value from the Fulcrum Property, as well as the properties of the four debtor affiliates whose plans provide for the simultaneous sale of them.  The sale of all the parcels in the project at the same time may result in realization of greater value because the whole may be more valuable than the sum of its parts.  A stay of the sale of the Fulcrum Property either prevents the simultaneous sales or requires postponement of the sales in the other cases.

Bay Point also has an interest in eliminating the continuing expenses of maintaining, operating, and insuring the Fulcrum Property.

40

Maximization of value from the Fulcrum Property and the properties of the affiliated debtors and elimination of ongoing expenses are even more critical for Fulcrum's unsecured creditors, who are behind Bay Point.

Although not creditors of Fulcrum, workers and residents in the Hampton Island Preserve have an interest in this controversy.  They need ownership of the subdivision project that has the financial ability to provide responsible management and maintenance and to complete the development of the project.  That is not going to happen in the absence of a sale and should not be delayed by months or years of appellate proceedings.

### VI.  Denial of a Stay Serves the Public Interest

No one benefits from a stalled subdivision project that is in irremediable financial distress.  Vacant lots do not produce the tax dollars that completed residences do.  Vacant lots do not produce customers for local businesses.

The public interest lies with the completion of a sale of the Fulcrum Property with the prospect that, after years of delay, the new owner will produce a viable subdivision.

### VII.  Conclusion

In summary, the confirmed Fulcrum Plan provides for a free and clear sale of the Fulcrum Property, which is property of the Fulcrum estate, with the Plaintiffs' interests attaching to the proceeds of the sale pending judicial determination of their claims and interests and of the interests of Bay Point and any other party that may assert an interest in the Fulcrum Property.  The Bankruptcy Code authorizes such a sale free and clear of the Plaintiffs' interests in the Fulcrum Property.  The free and clear sale and attachment of interests to the proceeds does not impair any of the Plaintiffs' rights and interests.

41

Section 1142(b) of the Bankruptcy Code authorizes the Court to require that they cancel their *lis pendens* of records.

The Plaintiffs have shown no basis for reconsideration of confirmation of the Fulcrum Plan.

The Plaintiffs are not likely to prevail on appeal and will suffer no irreparable injury in the absence of a stay pending appeal.  Other parties will suffer substantial injury if a stay postpones the sale of the financially distressed Fulcrum Property that is at risk of losing value if it is not promptly sold.   The public interest lies with restoring financial stability to the Fulcrum Property and the Hampton Island Preserve subdivision of which it is a part.

The Plaintiffs have shown no basis for a stay pending appeal.

Based on, and in accordance with the following, it is hereby **ORDERED and ADJUDGED** that the Plaintiffs' Motion for Reconsideration and/or to Stay Pending Appeal be, and it hereby is **DENIED.**

[End of Order]

**THIS ORDER HAS NOT BEEN PREPARED FOR PUBLICATION AND IS NOT INTENDED FOR PUBLICATION.**

<u>DISTRIBUTION LIST</u>

Ronald S. Leventhal
3600 Dallas Highway
Suite 230
Marietta, GA  30064

Benjamin R Keck
Keck Legal, LLC
Druid Chase - Suite 115
2801 Buford Highway NE
Atlanta, GA 30329

John Christopher Allerding
Thompson Hine LLP
Suite 1600
3560 Lenox Road NE
Atlanta, GA 30326

John Isbell
Law Offices of John F. Isbell LLC
3050 Peachtree Road, N.W., Ste 740
Atlanta, GA 30305

Steven G. Hall
Baker Donelson
Suite 1600, Monarch Plaza
3414 Peachtree Road, NE
Atlanta, GA 30326

Mark Duedall
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
Suite 1500
3414 Peachtree Road, N.E.
Atlanta, GA 30326

Alan Hinderleider
Office of the United States Trustee
362 Richard B Russell Federal Building
75 Ted Turner Drive, S.W.
Atlanta, GA 30303

Fletcher Beaumont Howard
Fox Rothschild LLP
Suite 1500
999 Peachtree St. NE
Atlanta, GA 30309

Alan R. Lepene
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291

Austin Bruce Alexander
Thompson Hine LLP
Two Alliance Center, Suite 1600
3560 Lenox Road NE
Atlanta, GA 30326